A98A0123. LITTLE v. THE STATE.
(498 SE2d 284)

ELDRIDGE, Judge.

The defendant, Hugh Little, appeals his conviction for the offenses of sale of cocaine and theft by taking.

1. In his first enumeration of error, the defendant asserts that the trial court erred by denying the defendant's motion for directed verdict in that there was insufficient evidence to support a conviction for the alleged sale of cocaine. Specifically, the defendant asserts that the State failed to introduce sufficient evidence to establish that the appellant was a party to the crime committed by Joyce Alexander.

Viewed in the light most favorable to the verdict, the evidence shows the following: on the evening of July 25, 1991, Beth Tessmer, an undercover officer with the Barnesville Police Department who was attached to the Narcotics Task Force for Monroe, Lamar, Upson, and Pike Counties, was conducting an undercover drug investigation. A confidential informant drove Officer Tessmer to a residence at 612 Old Talbotton Road, Thomaston, Georgia. This residence was the home of defendant Hugh Little and Joyce Alexander, who had lived with each other for 14 years.

Officer Tessmer testified that the defendant, who was wearing blue work clothes with the name "Hugh" over the shirt pocket, exited the residence and approached the vehicle in which the confidential informant and she were sitting. Officer Tessmer advised the defendant that she needed a "twenty," i.e., a $20 rock of crack cocaine. The defendant stated he did not have any drugs, but that Joyce Alexander, who was at that point coming out of the residence, could go get some for them. Alexander approached the vehicle and engaged in a

conversation with Officer Tessmer. The defendant stated to both Officer Tessmer and Alexander that Alexander would get the crack cocaine, and it would be okay for Officer Tessmer and the confidential informant to remain parked in the yard. Officer Tessmer handed Alexander $20, and Alexander left with the money to obtain crack cocaine. Approximately five to ten minutes later, Alexander returned with a small package containing what was later identified as a rock of crack cocaine.

On July 30, 1991, at approximately 10:30 p.m., Officer Tessmer and the confidential informant returned to the defendant's residence. On this occasion, Officer Tessmer was driving the vehicle. The defendant leaned into the vehicle and spoke with Officer Tessmer concerning another drug purchase. Officer Tessmer asked if the defendant could get a "twenty." The defendant said yes, but indicated he would have to go and get the cocaine. Officer Tessmer gave the defendant $20 and waited for him to return. While Officer Tessmer and the confidential informant were waiting, Alexander exited the residence and engaged in conversation with the officer. As this conversation was occurring, another car pulled into the driveway, and the defendant's mother, who lived next door, came into the yard where Officer Tessmer was waiting and began screaming for everyone to leave the residence. Officer Tessmer and the confidential informant left, drove down the street, and approached the defendant as he was walking back toward his residence. Officer Tessmer stopped and asked the defendant if he had obtained the drugs. The defendant shook his head no. When Officer Tessmer asked the defendant if he was going to get the drugs, he indicated no, and when Officer Tessmer asked the defendant to return the money, he refused.

"On appeal of a criminal conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations and punctuation omitted; emphasis in original.) *Browning v. State*, 207 Ga. App. 547, 548 (1) (428 SE2d 441) (1993). Furthermore, "[t]he determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury. [Cit.]" *Norris v. State*, 258 Ga. 889, 890 (1) (376 SE2d 653) (1989). "This [C]ourt determines the sufficiency of the evidence, but does not weigh the evidence or determine witness credibility." (Citations and punctuation omitted.) *Browning v. State*, supra at 548 (1). In light of Officer Tessmer's testimony, the jury was authorized to and did reject the testimony of Alexander that the defendant was not home on the night of July 25, 1991, and that she was the only one involved in the sale of cocaine.

"Every person concerned in the commission of a crime is a party

thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Furthermore, "[a] person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b). "The theory that one may act as a conduit or procuring agent of the purchaser and thereby escape culpability as a seller has been considered and rejected by this Court." (Citations and punctuation omitted.) *Gay v. State*, 221 Ga. App. 263, 265 (1) (a) (471 SE2d 49) (1996).

The evidence in this case is sufficient for a rational trier of fact to have found the defendant guilty beyond a reasonable doubt of the offense of being a party to the sale of cocaine under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Gay v. State*, supra; *Turner v. State*, 216 Ga. App. 896 (456 SE2d 241) (1995); *Chappell v. State*, 215 Ga. App. 596 (451 SE2d 491) (1994).

2. In the defendant's second enumeration of error, he alleges that the trial court erred in denying his motion for new trial as to the issue of the trial court's failure to charge at the conclusion of the evidence on the law concerning the presumption of innocence, the burden of proof, and the definition of reasonable doubt.

At the beginning of the trial in this case, the trial court instructed the jury on several points of law, including presumption of innocence, reasonable doubt, and burden and standard of proof. After closing arguments at the conclusion of the evidence, the trial court gave additional charges, but did not recharge on these points of law, even though the defendant had filed requests to charge on these specific points of law.

OCGA § 5-5-24 (b) requires that the trial court shall instruct the jury in the law after the closing arguments are completed. While "[i]t is commendable that the trial judge here gave the jurors preliminary instructions, before evidence was presented, to acquaint them with the nature of their duties and the basic principles of law they would apply during their deliberations[,] . . . it cannot serve as a substitute for a complete jury charge, as the statute requires, after the evidence is closed and arguments concluded." *Blandburg v. State*, 209 Ga. App. 752, 753-754 (2) (434 SE2d 510) (1993). The failure of the trial court to recharge the jury on the presumption of innocence and burden of proof after closing argument has been held by the Supreme Court to be error. *Griffith v. State*, 264 Ga. 326 (2) (444 SE2d 794) (1994).

In several cases, the appellate courts have dealt with the trial

court's failure to repeat preliminary instruction on the presumption of innocence, the burden of proof, and the standard of proof being beyond a reasonable doubt in the trial court's charge given after the closing arguments. See *Griffith v. State,* supra at 327; *Loyd v. State,* 222 Ga. App. 193 (474 SE2d 96) (1996); *Dennard v. State,* 216 Ga. App. 446 (454 SE2d 629) (1995); *Blandburg v. State,* supra. While the appellate courts have found in some instances, under the facts and circumstances of a particular case, that the failure to recharge on the presumption of innocence, the burden of proof, and the standard of proof after the closing argument was harmless error, a judicial determination of harmless error can be made only on a case-by-case basis. *LaRue v. State,* 137 Ga. App. 762 (224 SE2d 837) (1976). Therefore, we find that the better practice is to completely recharge the jury on such issues in the post-argument charge. "It is indeed difficult to imagine a more serious omission from a charge to the jury in a criminal case. It is no reply that a correct statement of [these] fundamental principle[s] was given to the jury in preliminary instructions. OCGA § 5-5-24 (b) requires the trial court to give the jury comprehensive instructions after closing arguments, even at the cost of extensive repetition." (Citations and punctuation omitted.) *Dennard v. State,* supra at 448 (1). A trial court's failure to repeat such charges after closing argument flirts with reversal. This case exemplifies why this is so.

The presumption of innocence, the burden of proof, and the standard of proof are the fundamental doctrines of American criminal jurisprudence and the bedrock of determining guilt or innocence in a criminal case. The failure of the trial court to give such charges would be a violation of the defendant's state and federal constitutional due process rights. "The landmark decision of *Chapman v. California,* 386 U. S. 18 (87 SC 824, 17 LE2d 705) [(1967),] established [the] principles to be followed in determining whether constitutional errors may be deemed harmless. Rejecting the contention that all federal constitutional errors must always be considered harmful, the court stated that there may be some constitutional errors which are so insignificant within the context of the factual situation of the particular case as to render the error harmless, not requiring the automatic reversal of a conviction. But, 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was *harmless beyond a reasonable doubt,*' and the burden for this showing rests with the prosecution. In fashioning a rule by which courts might determine whether a constitutional error is harmless, the *Chapman* Court adopted the language of *Fahy v. Connecticut,* 375 U. S. 85 (84 SC 229, 11 LE2d 171) [(1963)]: 'The question is whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" (Emphasis

supplied.) *LaRue v. State*, supra at 764. Further, "[T]he determination of whether a [f]ederal constitutional error is harmless is a matter of [f]ederal law. It is thus clear that in determining the harmful effect of a [Fifth] Amendment violation, state-fashioned rules of harmless error must give way to principles enunciated by the United States Supreme Court." Id. at 764-765, n. 1; *Chapman v. California*, supra at 20-21.[1]

The presumption of innocence and the burden of proof are concepts that a juror can easily understand. They are concepts with which jurors are familiar and are reinforced through the actual trial of the case when the State proceeds first to put up evidence in order to prove all elements of the offense with which the defendant is charged. However, the standard of proof that a person must be found guilty beyond a reasonable doubt is more complex and difficult for a juror to comprehend and apply.

Of the three standards of proof in civil, constitutional, and criminal cases, "beyond a reasonable doubt" is the most complex because it is contrary to what most people understand as the standard of proof. It is difficult for a juror to understand what must be proven before a defendant can be convicted of the crimes with which he is charged. The presumption of innocence "remains with the defendant throughout the progress of the trial, unless and until it [is] overcome in the minds of the jury from what is adduced on the stand, under the rules of law as given by the court[,]" that the defendant is guilty beyond a reasonable doubt. (Citations and punctuation omitted.) *Dennard v. State*, supra at 447 (1). "The stringency of the beyond a reasonable doubt standard bespeaks the weight and gravity of the private interest affected, society's interest in avoiding erroneous convictions, and

---

[1] In *Griffith v. State*, supra, the Supreme Court relied on *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976), in determining whether the failure of the trial judge to repeat his preliminary instructions on the presumption of innocence and the burden of proof in the final charge was harmless error. In *Johnson*, the Supreme Court recognized that there were two standards for review, constitutional and non-constitutional, and chose to use the non-constitutional standard because the issue in that case had no constitutional implications. The *Griffith* Court used the non-constitutional standard set forth in *Johnson* and found that it was "highly probable that the failure of the trial court to repeat all instructions in the final charge to the jury did not contribute to the judgment" and held that the error was harmless. *Griffith v. State*, supra at 327 (2). However, the non-constitutional "highly probable" test is a lesser standard than that required by *Chapman v. California*, supra, for determining if a federal constitutional error was harmless. While the standard for determining whether a non-constitutional error is harmless is for each state to decide, determinations of whether federal constitutional error is harmless must be determined under the standards set forth in *Chapman*. As in this case and *Griffith*, when the defendant generally reserves objections to the charges, he reserves all constitutional objections to the charge. The failure of the trial court in *Griffith* to recharge on the presumption of innocence and burden of proof was a state and federal constitutional due process violation. Therefore, *Griffith* should have been decided under the standard set forth in *Chapman*, as we have done in this case.

a judgment that those interests together require that society impose almost the entire risk of error upon itself." (Citations and punctuation omitted.) *Santosky v. Kramer*, 455 U. S. 745, 755 (102 SC 1388, 71 LE2d 599) (1982).

In this case, the only eyewitness, besides Officer Tessmer and Alexander, was the confidential informant, whose identity was not revealed at trial. The defendant exercised his constitutional right to remain silent and not to testify in his own defense. The testimony of Officer Tessmer was in direct conflict with the testimony of Alexander, who testified that the defendant was not present at their home on the night of July 25, 1991; that the defendant did not participate in the sale of the cocaine; and that the defendant's work shirts did not have "Hugh" over the pocket, but either had his last name of "Little" or did not contain any name.[2] Under these circumstances, we cannot say that the failure of the trial court to reiterate its instructions on the standard of proof and define "beyond a reasonable doubt" in the charge after closing arguments was harmless beyond a reasonable doubt and did not contribute to the verdict. Accordingly, we reverse. *LaRue v. State*, supra. See *Mosier v. State*, 218 Ga. App. 586 (462 SE2d 643) (1995). Even if the lesser non-constitutional standard was applied, this Court would have to reverse on the facts of this case.

3. The defendant also enumerates as error the trial court's refusal to grant his *Brady* motion to reveal the identity of the confidential informant.

In *Thornton v. State*, 238 Ga. 160 (231 SE2d 729) (1977), the Supreme Court held that, where the defendant was seeking the identity of a confidential informant under a motion made pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), *Brady* must be read together with *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957) where "the question is disclosure of the identity of the [S]tate's informer-witness or informer-participant if material to the defense on the issue of guilt or punishment." *Thornton v. State*, supra at 165; see *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511) (1988). Thus, when "an informer's identity is required under the standards set forth in *Brady*, the trial court must go further and weigh the materiality of the informer's identity to the defense against the [S]tate's privilege not to disclose his name under *Roviaro*." *Thornton v. State*, supra at 165.[3]

---

[2] This case can be distinguished from *Loyd v. State*, supra, in which there was no conflict in the witness' testimony as to guilt or innocence.

[3] In determining if the confidential informant's testimony would be exculpatory or impeaching under *Brady*, the trial court must conduct a two-step hearing. Initially, the trial court should hear evidence to determine: (a) if the confidential informant is an alleged

Prior to hearing evidence in this case, the trial court held a hearing outside the presence of the jury on the defendant's *Brady* motion. The only witness called was Alexander, who testified that the defendant was not home on the evening of July 25, 1991, and did not participate in the sale of cocaine. Alexander stated that she sold Officer Tessmer the cocaine. Alexander also testified that, on July 25, 1991, the confidential informant was driving the car; that the sale of cocaine occurred on the driver's side of the car; and that the confidential informant took the money from Officer Tessmer and handed it to her. Therefore, under the evidence before the court at the *Brady* hearing, the confidential informant was a witness-participant. Further, Alexander testified that there were no other witnesses to the transaction besides the police officer, the confidential informant, and herself. The assistant district attorney made an offer of proof that the police officer's testimony would contradict Alexander's testimony as to the defendant's participation in the crime. The defendant elected not to testify in his own behalf. There existed a sharp conflict in the evidence.

Thus, the threshold issues were met of showing that the confidential informant was an informer-witness or informer-participant; that there was a conflict between the testimony of the police officer and Alexander as to the defendant's guilt; and that the confidential informant was the only available witness who could amplify or contradict their testimony. Under such a scenario, the confidential informant's testimony could be material to the defendant on the issue of his guilt or punishment. Thus, the trial court should have required the State to disclose the identity of the confidential informant to the trial judge *only* and an in camera hearing should have been held to determine if, in fact, the confidential informant was an eyewitness and, if so, whether his testimony would be inculpatory, impeaching or exculpatory to the defendant's guilt or punishment. Only after making a determination that the testimony of the confidential informant was exculpatory to the defendant's guilt or punishment, should

informer-witness or informer-participant whose testimony appears to be material to the defense on the issue of guilt or punishment; (b) that there is no reasonable substitute testimony for that of the confidential informant; and (c) that the testimony for the prosecution and defense is or will be in conflict. Once this threshold has been met, the trial court must then hold an in camera hearing under the mandates set forth in *Thornton* and *Moore* to determine if the confidential informant was, in.fact, an eyewitness and, if so, whether his testimony would be inculpatory, impeaching or exculpatory to the defendant's guilt or punishment. If the trial court finds that the confidential informant's testimony is exculpatory to the defendant's guilt or punishment under *Brady*, then the balancing test of *Roviaro* and *Thornton* must be applied to determine if the identity of the informant must be revealed. See *Roviaro v. United States*, supra; *Thornton v. State*, supra; *Moore v. State*, supra. If the judge determines in camera that the informant was not an eyewitness or an eyewitness that is inculpatory, then, under the statutory privilege, the identity would not be divulged.

the trial court go further and "weigh the materiality of the informer's identity to the defense against the [S]tate's privilege not to disclose his name under *Roviaro*." *Thornton v. State*, supra at 165.[4]

Normally, we would remand this case to the trial court for a post-judgment in camera hearing to determine if the trial court's error was harmless to the defendant. However, since this case was reversed by our decision in Division 2, the trial court is directed, prior to proceeding with a new trial, to conduct an in camera hearing of the confidential informant's testimony in order that a proper balancing may be made between the accused's right to a full and fair opportunity to defend himself and the State's privilege not to disclose the name of the confidential informant, pursuant to the mandates of *Roviaro v. United States*, supra; *Thornton v. State*, supra; and *Moore v. State*, supra. Under the facts of this case, if the informant's testimony is exculpatory, then his identity must be revealed.

*Judgment reversed and case remanded with direction. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 26, 1998.

*William A. Adams, Jr.*, for appellant.
*William T. McBroom III, District Attorney, Randall K. Coggin, Assistant District Attorney*, for appellee.

---

[4] Under the balancing test of *Roviaro* and *Thornton*, "where the evidence sought from the unidentified source is required by the defendant on the mere possibility that the police might be *impeached* it is not enough to demand disclosure of the informer's identity." (Citations and punctuation omitted; emphasis in original.) *Moore v. State*, supra at 390.