## A04A0818. HEPBURN v. THE STATE.

### (605 SE2d 624)

PHIPPS, Judge.

Barbara Jean Hepburn was convicted of aggravated assault on Abraham Pinkney with a gun. She contends, among other things, that the trial court erred by failing to instruct the jury in its final charge on the presumption of innocence. Because it is highly probable that this error did not contribute to the verdict, the error was harmless. We therefore affirm.

The state's evidence showed that in April 1995, Pinkney began ending a three-year, intimate relationship with Hepburn. On August 14, 1995, at about 6:15 p.m., Pinkney arrived home and discovered Hepburn's car parked at his house, despite his repeated instructions to her since April not to come there. Hepburn exited the house and confronted Pinkney about his girlfriend, following him back inside the house. When Pinkney told her that he had to run an errand, she walked outside. Pinkney later walked out his front door and discovered Hepburn standing at the side of the house. She walked toward him, drew a gun, and said, "If I can't have you, no one will." As he fled toward the front door, she fired a shot, which hit the ground beside him. Hepburn turned the corner of the house and fired a second shot, which hit the side of Pinkney's head as he was climbing the steps to the door. Hepburn fled the scene. Pinkney testified that he had not hit her and had not threatened her. He also claimed that he had not been holding a gun, did not own a gun, and had never carried one.

Hepburn gave her account of the shooting. She had gone to Pinkney's home upset about his girlfriend. When Pinkney pulled into his driveway, he ignored her, entered his house through the back door, immediately slammed the door in her face, and then locked it. She entered the house through the front door, eventually following him back outside. He told her that he had another love interest. Hepburn recalled, "At this point, I was emotionally disturbed, destroyed." As she started to leave, Pinkney asked her to return some pictures to him. Hepburn testified that when she refused, he became angry and

pushed her. She then "pulled out [her] gun and the weapon discharged and the bullet hit the ground." Pinkney started running to the front porch; she started running toward her car. Hepburn testified that as Pinkney was heading up the steps, "He reached his hand into his clothes. I'm thinking this guy's got something. He's going to shoot me in the act or something. So I sp[un] around and when I sp[un] around, the gun discharged and hit him." Hepburn testified that Pinkney had told her several times that he had a gun. Hepburn further testified that she had not intended to shoot Pinkney, claiming that she had not been aiming the gun at him and that the gun discharged "accidentally" both times because "it didn't take much pressure and by spinning around it didn't — motion didn't take much to be accidentally discharged." She acknowledged, however, that to discharge a bullet from that gun required one "to keep cocking it for it to — the trigger to pop."

The state's expert firearms examiner testified that he had examined the gun used by Hepburn for any defect that might have resulted in an accidental discharge, "and I couldn't get it to go off by any manner other than pulling the trigger." He stated that the gun discharged a bullet only when operated as designed. That required a round in the chamber, the safety device in the "off" position, and the trigger pulled with a force of approximately 12.75 pounds. The expert firearms examiner described the gun as "single action," explaining, "You have to cock it first before you can discharge it."

1. Hepburn contends that the trial court erred by failing to instruct the jury on the presumption of innocence in its final charge. The state points out that the court instructed the jury on the presumption of innocence during its preliminary charge on the first day of the trial, that no request was made for the court to repeat that charge during the final charge, and that no objection was made after the final charge.

In *Griffith v. State*,[1] the Supreme Court of Georgia held that the provision in OCGA § 5-5-24 (b) that a trial court "shall instruct the jury after the arguments are completed" is mandatory and requires that a complete charge be given after closing arguments are completed. Because the presumption of innocence is so fundamental in any criminal case, the appellate court shall consider and review a failure to properly charge on that principle even where no objection was made.[2] However, where it is highly probable that the court's

---

[1] 264 Ga. 326, 327 (2) (444 SE2d 794) (1994).

[2] Id., citing OCGA § 5-5-24 (c); see also *Little v. State*, 230 Ga. App. 803, 806 (2) (498 SE2d 284) (1998); *Loyd v. State*, 222 Ga. App. 193, 195 (2) (b) (474 SE2d 96) (1996) (physical precedent only).

failure to comply with OCGA § 5-5-24 (b) did not contribute to the verdict, the error is harmless.[3]

The record reveals that the court's failure to comply with that Code section was harmless. Staunchly contradicting Hepburn's assertion that the gun fired accidentally is the uncontroverted evidence that the gun was operating properly at the time of the shooting and that it would not have discharged unless Hepburn cocked it and then pulled its trigger with the force of 12 pounds — each time. Hepburn admitted knowing how to operate the gun, and her claim that she had not been aiming at Pinkney is contrary to the physical evidence that the two bullets discharged from the gun struck only Pinkney or the ground near him.

Moreover, Hepburn's claim that the gun had discharged accidentally in no way defended her act of drawing it. Where the act of pointing a gun places the victim in reasonable apprehension of immediate violent injury, the crime of aggravated assault has occurred (unless justified).[4] Hepburn's own testimony revealed that the purpose of pulling the weapon was to place Pinkney in apprehension of immediate violent injury. And his flight demonstrated that he was aware of and understandably apprehensive of immediate violent injury by her pulling a gun.[5] Thus, unless justified, Hepburn's act of drawing her gun constituted aggravated assault.

One who asserts self-defense argues that the act was legally justified by a reasonable fear of immediate serious harm to oneself or another.[6] Even assuming, without deciding, that Hepburn was justified in drawing her weapon when Pinkney pushed her, that push could not have further justified her firing upon him as he was running away. Hepburn's claim that, as Pinkney was racing to the front door, she reasonably feared that he would then shoot her is weakened by the uncontroverted evidence that Pinkney was unarmed. In addition, the bullet wound to the side of Pinkney's head indicates that he was trying to flee.

The trial transcript reveals that the evidence was closed at about 3:30 p.m. on the second day of trial. The court reminded the jury of its preliminary charge given the previous morning and then began its final charge, which included instructions on the two affirmative defenses asserted by Hepburn (accident and self-defense). The court accurately defined accident and charged the jury that if it found that the incident resulted from an accident, then it had the duty to acquit

---

[3] *Griffith*, supra.

[4] *Dunagan v. State*, 269 Ga. 590, 593 (2) (b) (502 SE2d 726) (1998).

[5] See *Rhodes v. State*, 257 Ga. 368, 369-370 (5) (359 SE2d 670) (1987); *Morris v. State*, 263 Ga. App. 115, 118 (4) (587 SE2d 272) (2003).

[6] *Austin v. State*, 275 Ga. 346, 347 (2) (566 SE2d 673) (2002).

Hepburn. The court adequately charged the jury on self-defense, explaining that the state had the burden of proving beyond a reasonable doubt that Hepburn had not been justified, and that, if it found that Hepburn's conduct was justified, then it would have the duty to find her not guilty.

Given the overwhelming evidence of Hepburn's guilt, the relatively short period of time between the preliminary charge (during which an instruction on the presumption of innocence was given) and deliberation, and the court's instructions during its final charge concerning the affirmative defenses asserted by Hepburn, we conclude that the court's failure to repeat the instruction on the presumption of innocence in its final charge was harmless.[7]

2. Hepburn also argues that trial counsel's failure to object to the court's omission of the presumption of innocence charge was ineffective assistance of counsel. Our decision in Division 1 renders this contention moot.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 1, 2004 — 

*Robert L. Persse*, for appellant.

*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.

---

[7] See *Griffith*, supra; *Loyd*, supra at 195-196 (2) (b); compare *Massey v. State*, 270 Ga. 76, 77-78 (2) (b) (508 SE2d 149) (1998) (failure to give a comprehensive charge on circumstantial evidence at the close of the evidence was reversible error, where the jury was generally instructed on circumstantial evidence at the commencement of a four-day trial, and those instructions were given before the jury listened to numerous witnesses, heard considerable testimony, and was exposed to all of the evidence – much of it circumstantial).