## A08A0283. LUKER v. THE STATE.
(662 SE2d 240)

BARNES, Chief Judge.

A jury found Joe William Luker guilty of burglary. Luker appeals, arguing that the trial court erred in permitting a witness to testify. He also challenges the trial court's jury instructions. Finding no error, we affirm.

Viewed most favorably to the verdict, the evidence shows that Kip Buford and his brother returned home on December 24, 2004, to find Luker inside their house. The brothers confronted Luker, who stated that he was looking for a friend, Jeff Rampley, and had been told that Rampley lived there. When the brothers informed him that Rampley did not reside at the house, Luker departed. The brothers did not notice anything missing from the house, but they reported the incident to the police, and officers apprehended Luker a short time later.

After his arrest, Luker told police that he was looking for Rampley, allegedly because Rampley's sister, Ginger, had informed him that Rampley lived at the Bufords' address. Ginger testified, however, that although she knew Luker, she had not spoken with him about her brother or his whereabouts.

1. Luker first argues that the trial court erred in allowing Ginger to testify because the State failed to include her on its witness list, in violation of OCGA § 17-16-8 (a). The record shows that before Ginger's testimony, defense counsel noted that the State had not listed her as a witness. The trial court recessed the proceedings to give defense counsel an opportunity to speak with Ginger, who then testified without further objection or comment from the defense.

Upon learning that the State has violated its witness list obligations under OCGA § 17-16-8, the trial court may, in its discretion, "order the [S]tate to permit an interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from presenting the witness not disclosed, or may enter such other order as its deems just under the circumstances." (Punctuation and footnote omitted.) *Carter v. State,* 253 Ga. App. 795, 797 (1) (560 SE2d 697) (2002). The trial court has latitude in fashioning an appropriate remedy, and we will not reverse its decision absent an abuse of discretion. Id.

No abuse occurred here. Although the State evidently left Ginger off its witness list, she certainly was not a "surprise" witness or unknown to Luker. Rather, she was a key element of Luker's own explanation for his presence at the Buford home. The trial court granted defense counsel an opportunity to interview Ginger, and counsel asked for no additional relief following that interview. Furthermore, Luker has not argued — or cited any evidence — that the State's failure to list Ginger as a witness resulted from bad faith. Under these circumstances, the trial court did not err in admitting her testimony. *Morris v. State,* 268 Ga. App. 325, 326-327 (1) (601 SE2d 804) (2004); *Carter,* supra, 253 Ga. App. at 797-798.

2. Luker also argues that the trial court improperly gave the jury an *Allen* charge when it became deadlocked. The record shows that, after deliberating for some period of time, the jury informed the trial court that it was "hung up." The trial court asked the foreman whether "there [had] been any movement in the numbers in terms of those voting one way or the other" since deliberations began. After determining that little movement had occurred and that jurors had made no progress for "[a]bout the last hour," the trial court gave a modified *Allen* charge. Upon inquiry from the trial court, defense counsel did not object to the charge.

"Failure to object to a jury charge in a criminal case constitutes a waiver except where, under OCGA § 5-5-24 (c), there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made or not." (Citations omitted.) *Medina v. State,* 234 Ga. App. 13, 15 (2) (505 SE2d 558) (1998); see also *Davis v. State,* 184 Ga. App. 415, 416 (2) (361 SE2d 547) (1987) (upon inquiry from trial court, defendant's failure to object to

*Allen* charge constituted waiver). Given Luker's failure to object, we will not reverse absent a substantial error in the *Allen* charge. And to demonstrate such error, Luker must show that "the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial." (Citation and punctuation omitted.) *Medina*, supra, 234 Ga. App. at 15 (2). Luker has not made this showing here.

When we review an *Allen* charge, "[t]he issue . . . is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Citation and punctuation omitted.) *Lowery v. State*, 282 Ga. 68, 71 (4) (a) (646 SE2d 67) (2007). On appeal, Luker does not question the language of the trial court's *Allen* charge. Instead, he complains that the trial court improperly inquired into the numerical split of the jury before giving it.

The record belies this assertion. In an effort to determine whether the jury was truly deadlocked, the trial court merely asked whether there had been any "movement" in the voting numbers. It appears that when jurors sent a note to the trial court first indicating that they were "hung," they indicated the numerical split. The trial court, however, asked the foreman to describe the voting movement "[w]ithout telling me any numbers of who voted what way or how many people voted one way or the other." We find no substantial error in the questions asked by the trial court prior to the *Allen* charge. See *Lowery*, supra, 282 Ga. at 72 (4) (a) ("[G]iving an *Allen* charge after inquiring into the numerical division of the jury where there is no announcement of which way the vote is split, is not coercive as it does not place undue pressure on the jurors to abandon their convictions.") (citations omitted).

Luker also argues that the jury's deliberation after the *Allen* charge was disproportionately shorter than the deliberation before the charge, indicating that the charge coerced jurors into a conviction. As discussed above, however, Luker has not challenged the language of the charge itself or shown that it was coercive. We recognize that the time spent by jurors deliberating before and after an *Allen* charge may be relevant in determining whether a possibly coercive instruction was, in fact, coercive in a particular case. *Lowery*, supra, 282 Ga. at 72. But the length of deliberation does "not render a non-coercive charge coercive." Id. Accordingly, because Luker has not demonstrated that the *Allen* charge was even potentially coercive, he cannot show substantial error on this basis. Id.

3. Finally, Luker argues that the trial court erred in recharging the jury on the elements of burglary. The trial court defined burglary for the jury on several occasions, when jurors raised questions

expressing confusion. Each time, the court asked whether Luker excepted to the recharge, and defense counsel raised no objection. To succeed on appeal, therefore, he must demonstrate a substantial and harmful error in the charge. *Medina*, supra, 234 Ga. App. at 15.

Once again, Luker does not question the actual language of the trial court's instructions. Instead, he argues that by recharging the jury several times on burglary, the court suggested to deadlocked jurors — and particularly those voting to acquit — that they had misinterpreted the law. He also claims that by repeatedly defining burglary, the trial court created an impression favorable to the State.

The record shows, however, that jurors expressed uncertainty several times on the elements of burglary, and the trial court merely recharged the jury with the applicable law on that offense. As defense counsel noted when asked whether she objected to the final recharge: "The only thing you gave them was the exact charge on burglary, so I can't . . . except to that." Luker has shown no error — much less substantial error — with respect to the court's recharge. Accordingly, this claim of error presents no basis for reversal. See *Davis*, supra, 184 Ga. App. at 416 (3) (" 'Where the jury, after having been charged by the court, returns into court and requests an instruction upon a specific question, it is not error for the judge to confine his instruction to the specific point suggested by the jury's inquiry.' ") (citation omitted).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 7, 2008.

*William L. Henderson*, for appellant.
*Leigh E. Patterson, District Attorney, Finnis K. Salmon, Assistant District Attorney*, for appellee.