## A11A1147. TIDWELL v. THE STATE.
(718 SE2d 808)

MILLER, Presiding Judge.

A Floyd County jury convicted Billy Joe Tidwell of terroristic threats (OCGA § 16-11-37 (a)) and aggravated battery (OCGA § 16-5-24 (a)). On appeal, Tidwell claims that the evidence was insufficient to support his convictions. We disagree. He also contends that the trial court erred (i) in instructing the jury that Tidwell could commit the crime of terroristic threats in a manner not averred in the indictment, and (ii) in failing to instruct the jury on the presumption of innocence, reasonable doubt, and burden of proof following closing argument. We agree with Tidwell that the trial court erred, but we find that the errors were harmless because there was no reasonable possibility that Tidwell was convicted for committing terroristic threats in a manner not averred by the indictment, and because the trial court gave complete instructions to the jury during the course of the one-day trial, albeit not in the sequence required by OCGA § 5-5-24 (b). Lastly, Tidwell claims that the trial court failed to adequately recharge the jury on the corroboration needed to convict him of terroristic threats. We conclude that Tidwell waived this objection. Accordingly, we affirm his convictions.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence." *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). Rather "we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Thomas v. State*, 254 Ga. App. 226, 227 (1) (561 SE2d 444) (2002). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that Tidwell and the victim, who were in a romantic relationship, shared an apartment. Tidwell became abusive toward the victim. He did not allow the victim to go anywhere by herself apart from work, where she was expected to call him at every break.

One evening after she got into the bed with Tidwell, who had

taken some medication to help him sleep, the victim asked him if she could turn down the air conditioner. Tidwell responded by jumping on the victim and striking her repeatedly in the face. He told the victim that he was "tired of [her] s___ and that he was going to kill [her]." After Tidwell got off of the victim, she asked him what she had done wrong given that all she had asked was to turn down the air conditioner. Tidwell jumped on the victim again, and told her that she "[did not] know when to shut [her] mouth," and that she "was going to realize who was the man of that house."

Afterward, Tidwell forbade the victim from going outside, but gave her permission to go to the kitchen and smoke a cigarette; she waited there until she thought he was asleep. The victim then telephoned her niece, told her that Tidwell had beaten her up, and asked her to call 9-1-1. According to the victim, she was terrified, and she did not call 9-1-1 directly because she was worried that Tidwell might get up and hit redial on the telephone. The police arrived shortly thereafter.

The responding officer saw that the victim was shaking and looked like she had been crying. The left side of the victim's face was beginning to swell, and she had blood on her lip. The officer saw no injuries on Tidwell, who claimed that he did not hit the victim and that he was not sure what happened to her face. A second officer confirmed that the victim's face was swollen, her lip was "busted," and that Tidwell did not appear to be injured.

During the trial, the State called one of Tidwell's former girlfriends to testify to a similar transaction. According to the witness, she called Tidwell's parents and told them to tell Tidwell to return her truck, which he had taken, or she would call the police. Tidwell appeared at the witness's residence with the truck's keys, grabbed her by the back of her hair, and slammed her into the fireplace. He then put the witness on the floor, kicked her, struck her in the face with his fist, and "all over [her] body." Tidwell told her, "I'm going to kill you." He then went outside and retrieved a shotgun from the truck, fired through the door, and "was coming up the stairs" when an alarm went off and he ran.

1. (a) Tidwell was indicted for committing the crime of terroristic threats in that he "with the intent to terrorize, threaten[ed] to commit a crime of violence against" the victim. OCGA § 16-11-37 (a) provides in pertinent part that a person "commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another[.]"[1] However,

---

[1] Alternatively, the statute provides that the threat may be "in reckless disregard of the risk of causing such terror[.]" OCGA § 16-11-37 (a). See *Evans v. State*, 266 Ga. App. 405, 408

"[n]o person shall be convicted . . . on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a). Tidwell argues that the only evidence pertaining to the terroristic threat was from the victim, and that her testimony was not sufficiently corroborated. We disagree.

The victim's testimony was corroborated by independent evidence of the injury to her face and by the officer's testimony that when he arrived at the scene, he saw that the victim was shaking, looked like she had been crying, and was scared. See *Nelson v. State*, 277 Ga. App. 92, 97 (1) (c) (625 SE2d 465) (2005) (evidence that victim had been injured in the eye during the incident and witnesses' testimony as to her frightened state was sufficient corroborative evidence of terroristic threat); *Martin v. State*, 219 Ga. App. 277, 283 (10) (464 SE2d 872) (1995) (testimony of others that the victim was frightened, disturbed, and terrified was sufficient to corroborate victim's testimony). "Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury." (Citations and punctuation omitted.) Id. Any rational trier of fact could have found Tidwell guilty of the crime of terroristic threats beyond a reasonable doubt.

(b) Tidwell was indicted for committing the offense of aggravated battery by punching the victim in the jaw and face, causing the loss of use of her mouth and jaw. A person commits aggravated battery when he "maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). Tidwell argues that the evidence was insufficient to show that the victim lost the use of her mouth and jaw. We disagree.

In order to establish aggravated battery, "the bodily member need not be rendered permanently useless, and *even the temporary reduced use of a bodily member* may be sufficient to render it useless." (Citation, punctuation and footnote omitted; emphasis supplied.) *Biggins v. State*, 299 Ga. App. 554, 555 (1) (683 SE2d 96) (2009). In this case, the victim testified that her jaw did not function normally after she was injured. Specifically, she could not open or close her mouth without severe pain. Nor could she lie on the left side of her face. She continued to have trouble eating because she could not open her mouth as far as she could before the injury. She incurred extensive medical bills and, at the time of trial, had an appointment to see a specialist. The evidence was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that

(1) (b) (597 SE2d 505) (2004).

Tidwell's blows had rendered her mouth and jaw useless, and that he was guilty of aggravated battery beyond a reasonable doubt. See id. at 556 (1) (victim could barely hear out of her ear and needed surgery following attack); *Daniel v. State*, 271 Ga. App. 539, 539-540 (1) (610 SE2d 90) (2005) (victim shot in the hip and had to use crutches for six months).

2. Tidwell contends that the trial court erroneously instructed the jury as to the crime of terroristic threats. We find that the error was harmless beyond a reasonable doubt.

The trial court twice charged the jury that "[a] person commits the offense of terroristic threats when that person threatens to commit any crime of violence with the purpose of terrorizing another or in reckless disregard of the risk of causing such terror." The charge is consistent with the statute,[2] but the indictment specifies only that Tidwell threatened to commit a crime of violence "with the intent to terrorize." Therefore, Tidwell argues, the jury could have found him guilty of threatening to commit a crime of violence with only a reckless disregard of the risk of causing terror, and not with the intent to cause terror, as alleged in the indictment.[3]

Generally, inapplicable portions of a charged Code section are unnecessary and not harmful. *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909) (1996). However,

> [a] criminal defendant's right to due process may be endangered when, as here, an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.

(Citations and punctuation omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

Considering the charge as a whole, the jury was not instructed to

---

[2] See OCGA § 16-11-37 (a); *Evans*, supra, 266 Ga. App. at 408 (1) (b); *Thomas*, supra, 254 Ga. App. at 228 (1).

[3] Tidwell's counsel failed to object to the charge. However, "we are authorized to review the trial court's jury instructions for plain error, such as a due process violation of the type [Tidwell] alleges here." (Citations omitted.) *Martin v. State*, 303 Ga. App. 117, 120 (3), n. 1 (692 SE2d 741) (2010). See OCGA § 17-8-58 (b).

limit its consideration to the commission of the crime as alleged in the indictment. See *Dukes v. State*, 265 Ga. 422, 424 (457 SE2d 556) (1995) ("[w]ithout a limiting instruction . . . the jury charge on unlawful appropriation violated due process"). Nevertheless, we conclude that there was no reasonable possibility that the jury convicted Tidwell for committing the crime of terroristic threats in a manner not charged in the indictment. The evidence shows that Tidwell threatened to kill the victim, after which "he continued to pound [her] in the face." When asked for an explanation of his behavior, Tidwell informed the victim that she "was going to realize who was the man of that house" and that she "[did not] know when to shut [her] mouth." Tidwell's conduct, as described by the victim, was consistent with an intent to terrorize, but not with a reckless disregard of a "risk" of causing terror. Compare *Anthony v. State*, 276 Ga. App. 107, 110 (3) (622 SE2d 450) (2005) (given defendant's intentional conduct in firing and pointing gun, there was no evidence of reckless conduct), with *Koldewey v. State*, 310 Ga. App. 788, 791 (1) (714 SE2d 371) (2011) (where defendant informed victim in a telephone call that, after his release from the mental health hospital, "whatever happens, happens," evidence would support the inference that call was made with intent to terrorize or "at least in reckless disregard of the risk of causing such terror"). Thus, "[t]he evidence presented at trial supported two alternative theories: either that appellant committed no offense at all, or that he committed [the crime of terroristic threats] as alleged in the indictment" by, with the intent to terrorize, threatening to commit a crime of violence against the victim. *Buice v. State*, 281 Ga. App. 595, 597 (2) (a) (636 SE2d 676) (2006). The charge, although not consistent with the indictment, did not reasonably present the jury with an alternate basis for finding Tidwell guilty of terroristic threats and, therefore, does not require that we reverse the conviction. See *Childs v. State*, 257 Ga. 243, 253 (17) (357 SE2d 48) (1987).

3. Tidwell also contends that, notwithstanding its preliminary instructions, the trial court erred in failing to instruct the jury following closing arguments on the presumption of innocence, reasonable doubt, and the burden of proof. We agree that the trial court erred, but we conclude that it is highly probable that the error did not contribute to the verdict.

In pertinent part, OCGA § 5-5-24 (b) requires that "[t]he court . . . shall instruct the jury after the arguments are completed." Accordingly, the trial court is required "after arguments are completed, to instruct comprehensively on the law applicable to the case, i.e., those charges which are relevant and necessary to weigh the evidence and enable the jury to discharge its duty, OCGA § 15-12-139, and which would constitute error under OCGA § 5-5-24 (c) if not given." (Punctuation omitted.) *Griffith v. State*, 264 Ga. 326, 327 (2) (444

SE2d 794) (1994). In this case, the trial court instructed the jury on the presumption of innocence, reasonable doubt, and the burden of proof before opening arguments. The trial court gave additional instructions following closing arguments, and in doing so, it again instructed the jury that the burden "never shifts to the defendant to prove their innocence," but it did not instruct the jury again as to the presumption of innocence and the requirement that the State prove each element of the crime beyond a reasonable doubt.[4] Rather, the trial judge instructed the jury to "[k]eep in mind the instructions [he] gave [them] at the beginning of the case."

We find it highly probable that the trial court's failure to repeat the instructions as to the presumption of innocence and reasonable doubt in the final charge did not contribute to the verdict. See *Griffith*, supra, 264 Ga. at 327 (2) (applying highly probable test); *Williams v. State*, 277 Ga. 853, 856 (3) (596 SE2d 597) (2004) (same). Cf. *Little v. State*, 230 Ga. App. 803, 807 (2), n. 1 (498 SE2d 284) (1998) (treating failure to recharge as federal constitutional error). "The trial court's failure in *Griffith* to give a charge on the presumption of innocence immediately before the jury retired to deliberate was deemed harmless error, in part because the trial court had charged the jury on the presumption of innocence in a preliminary charge." *Tillman v. Massey*, 281 Ga. 291, 294 (1) (637 SE2d 720) (2006). Here, the trial court charged the jury on the principles of reasonable doubt and the presumption of innocence in the preliminary charge, referred the jury back to those instructions in its final charge, and it did so in the context of a one-day trial. Compare *Hepburn v. State*, 269 Ga. App. 817, 820 (1) (605 SE2d 624) (2004) (failure to recharge harmless considering, among other things, "the relatively short period of time between the preliminary charge . . . and deliberation"), with *Massey v. State*, 270 Ga. 76, 78 (2) (b) (508 SE2d 149) (1998) (failure to recharge on circumstantial evidence was reversible error where general instruction on principles of circumstantial evidence was given at the start of a four-day trial). Given the strength of the evidence of Tidwell's guilt, and given that the jury deliberated the same day that they were given the instructions as to the presumption of innocence and reasonable doubt, we find that the trial court's error in failing to comply with OCGA § 5-5-24 (b) was harmless.

---

[4] The presumption of innocence and reasonable doubt are so fundamental to a criminal trial that we will review a failure to properly charge on those principles even where, as here, no objection was made. See OCGA § 5-5-24 (c); *Hepburn v. State*, 269 Ga. App. 817, 818 (1) (605 SE2d 624) (2004); *Little v. State*, 230 Ga. App. 803, 806 (498 SE2d 284) (1998). But see *Williams v. State*, 277 Ga. 853, 856 (3) (596 SE2d 597) (2004) (counsel's consent to giving of instructions before closing argument barred complaint on appeal that trial court failed to comply with OCGA § 5-5-24 (b)).

4. After the jury asked the trial court to clarify the definition of terroristic threats, the trial court recharged the jury on the elements of terroristic threats. The recharge failed to specify that no person shall be convicted of terroristic threats on the uncorroborated testimony of the party to whom the threat is communicated. Tidwell claims that such omission was error. When the trial court announced the proposed recharge and asked for any objections before instructing the jury, however, Tidwell did not object. Accordingly, Tidwell waived the objection. See *Massalene v. State*, 224 Ga. App. 321, 322 (2) (480 SE2d 616) (1997).

Moreover, the trial court's failure to recharge on corroboration was not plain error, see OCGA § 17-8-58 (b), or substantial error which was harmful as a matter of law, see OCGA § 5-5-24 (c). "[I]t is axiomatic that the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." (Punctuation and footnote omitted.) *Wilcox v. State*, 297 Ga. App. 201, 209 (5) (677 SE2d 142) (2009). In its instructions to the jury following closing argument, the trial court properly charged the jury that "[n]o person shall be convicted of terroristic threats on the unsupported testimony of the party to whom the threat is made[.]" Although the trial court did not repeat the corroboration charge in response to the jury's request for the definition of terroristic threats, "[w]here the jury, after having been charged by the court, returns into court and requests an instruction upon a specific question, it is not error for the judge to confine his instruction to the specific point suggested by the jury's inquiry." (Punctuation omitted.) *Luker v. State*, 291 Ga. App. 434, 437 (3) (662 SE2d 240) (2008) (quoting *Davis v. State*, 184 Ga. App. 415, 416 (3) (361 SE2d 547) (1987)). Accordingly, Tidwell does not show plain error which affects substantial rights of the parties, see OCGA § 17-8-58 (b), or substantial error which was harmful as a matter of law, OCGA § 5-5-24 (c). See *Luker*, supra, 291 Ga. App. at 437 (3).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 13, 2011 —
RECONSIDERATION DENIED NOVEMBER 10, 2011 — ■

*Sheueli C. Wang*, for appellant.
*Leigh E. Patterson, District Attorney, Kay A. Wetherington, Assistant District Attorney*, for appellee.