## A93A0408. BLIGE v. THE STATE.
(432 SE2d 574)

JOHNSON, Judge.

Nathaniel Blige was charged with robbery, aggravated assault and burglary. At trial, the 80-year-old victim testified that on the date of the incident she heard noises on her porch and went to investigate. She saw a hole in the porch screen and a man going through her cabinet drawer. The man hit her under the chin with his fist, knocking her to the ground. The man dragged her into the living room, where he grabbed a clock off the wall and broke it over her head. When the man asked for her jewelry, the victim took him to the bedroom. The man stole jewelry and money from the room and left the house. Three days after the incident, the victim was unable to identify Blige as the perpetrator when she looked at a photographic lineup which included a ten-year-old photograph of him. Eleven days after the incident, the victim identified Blige as the perpetrator when she picked a recent photograph of him out of another photographic lineup. The victim also made an in-court identification of Blige as the perpetrator. Two expert witnesses testified that Blige's fingerprint was found on the clock in the victim's home. The State also presented evidence of two similar transactions. The jury found Blige guilty of robbery, aggravated assault and burglary. Blige appeals from his convictions and the denial of his motion for a new trial. We reverse Blige's conviction for aggravated assault and affirm his convictions for robbery and burglary.

1. Having reviewed the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found Blige guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Blige correctly contends that the court's charges to the jury on the definition of aggravated assault erroneously authorized the jury to convict him for having committed an aggravated assault in a manner other than that alleged in the indictment. Blige was specifically indicted for aggravated assault by assaulting the victim with a wall clock as an object which when used offensively against a person is likely to result in serious bodily injury. He was not indicted for aggravated assault with intent to rob. The court, however, charged the jury that aggravated assault is committed by a person who "assaults another person with intent to rob, or with a deadly weapon, or with any object, device, or instrument which when used offensively against a person is likely to or actually does result in serious bodily injury."

The court further instructed the jury that "intent to rob is a material element of aggravated assault, as charged in this case." After some deliberations, the jury asked to be recharged on the definition of aggravated assault. The court again charged them that aggravated assault can be committed by alternative methods, including when a person assaults another person with intent to rob.

"It is generally not error to give an entire Code section in a charge, even though part of the section may be inapplicable to the allegations and the evidence. [Cit.]" *Cottingham v. State*, 206 Ga. App. 197, 198 (2) (424 SE2d 794) (1992). However, "[i]t is error to charge the jury that a crime may be committed by alternative methods, when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury." (Citations and punctuation omitted.) *Pettway v. State*, 204 Ga. App. 804 (420 SE2d 619) (1992). In the instant case, the trial court erred in charging the jury that aggravated assault may be committed by alternative methods since the indictment charged Blige with committing the crime by a specific method. The court's error was harmful because the court did not merely read to the jury the entire Code section defining aggravated assault, but actually emphasized a method of committing the crime not specified in the indictment.

The State argues that the court's error was corrected by the recharge on the definition of aggravated assault because the recharge omitted the erroneous statement that intent to rob is a material element of aggravated assault as charged in this case. While it is true that the court did omit this erroneous instruction from its recharge, such an omission does not amount to a *correction* of the original improper charge. The court never told the jury that its original instruction was erroneous, the court never told the jury that intent to rob is *not* an element of the crime charged. The jury had no reason to disregard the original erroneous charge or to believe that intent to rob is not an element of the aggravated assault charged. The fact that the court did not repeat the improper statement simply means that the court made the error only once instead of twice.

In its recharge the court again instructed the jury that "[a] person commits the offense of aggravated assault when that person assaults another person *within [sic] intent to rob*, or with a deadly weapon, or with any object, device, or instrument which when used offensively against a person is likely to or actually does result in serious bodily harm." (Emphasis supplied.) Nowhere in its recharge did the court limit the jury's consideration of the aggravated assault charge to the manner alleged in the indictment. If anything, the

recharge confirmed in the jurors' minds that they could consider aggravated assault with intent to rob as one of the alternative methods of committing aggravated assault. Because of the court's charge and recharge, there is a reasonable possibility that the jury convicted Blige of aggravated assault with intent to rob, rather than in the manner alleged in the indictment. The aggravated assault conviction is therefore defective and must be reversed.

3. In his second enumeration, Blige argues that the court erred in requiring him to reveal the name of his fingerprint expert to the State and in requiring the expert to provide a written report to the State. In his third enumeration, Blige argues that the court erred in allowing the State to comment to the jury that the expert, called as a State witness, was originally hired by the defense. In his fifth enumeration, Blige claims that the court erred in admitting the similar transaction evidence. We have already decided these issues adversely to Blige in a prior similar case involving him. *Blige v. State*, 205 Ga. App. 133 (2), (6) (421 SE2d 547) (1992).[1]

4. We find no merit to Blige's contention that the court erred in admitting into evidence a ten-year-old "mug shot" photograph of him. Contrary to Blige's argument that the sole purpose of offering the photograph was to place his character in issue, the photograph was relevant to show that the victim did not pick it out of a photographic lineup because Blige's appearance had changed since the time the photograph was taken. See *O'Toole v. State*, 258 Ga. 614, 615-616 (2) (373 SE2d 12) (1988). The admission of the photograph did not indicate that Blige was guilty of any previous crime and was not in error. *Milsap v. State*, 196 Ga. App. 820, 822 (2) (397 SE2d 168) (1990).

*Judgment affirmed in part, reversed in part. Blackburn and Smith, JJ., concur.*

DECIDED MAY 26, 1993 —
RECONSIDERATION DENIED JUNE 8, 1993 ▮

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.

---

[1] The Georgia Supreme Court granted certiorari in that case to determine whether the State should be allowed to argue to a jury that a defendant would have called his expert witness if the results of the expert's testing had been favorable to the defense.