## A09A2025. PRICE v. THE STATE.
### (693 SE2d 826)

BARNES, Judge.

Following the denial of his motion for new trial, Robert Price appeals his convictions for burglary and criminal trespass. He contends that the evidence was insufficient to sustain his convictions, and that the trial court erred in failing to give his requested charge on "mistake of fact." Following our review, and upon finding the evidence sufficient and discerning no error with the trial court's charge, we affirm Price's convictions.

1. Price first contends that the evidence was insufficient to sustain his convictions for burglary and criminal trespass because the State failed to prove that he entered the victim's house with the intent to "commit a theft therein."

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). This standard is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

So viewed, the evidence shows that on March 10, 2006, Charles Marlow took his daughter to their former family home in which his ex-wife, until shortly before the incident, had lived. The daughter testified that they were checking on the home and looking for her mother. No one was living at the home then, although Marlow's ex-wife and daughter both still had possessions there. The mother was apparently living with friends. When they arrived, there was a red Jeep backed into the driveway that neither of them recognized.

When the daughter went into the house she noticed that the inside of the house was "torn apart" and her mother's things were "dumped everywhere." There were "[h]oles in the walls, ceiling fans ripped out, [and] clothes throwed [sic] everywhere." She heard noises coming from the kitchen that sounded like someone "rummaging" through drawers. A man, later identified as Price, came around the corner from the kitchen and the daughter screamed for her father. She also noticed two other men come out of a nearby bedroom and go down the basement stairs.

The father was sitting in his truck when his daughter ran outside screaming that there were people in the house. He grabbed his shotgun and ran inside where he could hear "guys running around downstairs." The father testified that when he entered the house, Price came around the corner and was "talking on his cell phone or pretending like he was." He held the gun on Price, told him that he had called police, and ordered him to leave the house. The two other men who had been downstairs were "hiding in the back of that Jeep," and the father ordered them to get out and wait in the driveway with Price until police arrived.

The mother testified that she had been at the house the day before the burglary and had dressed for work there. She further testified that she locked the door before leaving at 3:00 p.m., the house was not in disarray, and that the house was fully furnished other than a couch and chairs that she had sold to a co-worker. When she returned on the day of the incident in response to her daughter's call, all of her things were gone and "there was nothing there, nothing." Price and the other men were still there and the mother recognized one of the men as someone she had met "through friends of [her] niece" when she had been involved with drugs, but she did not know Price. She and her ex-husband later compiled a list of missing items, including jewelry, a pool table, televisions, and appliances. The mother also testified that she had never given any of the men permission to take anything from her house. Police did not recover any stolen property from the Jeep.

When police arrived, Price and the other men were taken into custody. Price told the investigator that he was at the victim's home because he thought it was for sale and was looking for a home for his mother. One of the other men told police that he knew the woman who owned the house and had suggested that Price look at that house. The other suspect also told police that they were there to look at the house with Price, and that he saw a "for sale" sign in the front yard. The other men denied entering the house. Based on Price's statement that he had entered the house, Price was charged at that time with criminal trespass. The other two men were not charged. Price was later indicted for one count of burglary as well.

2. Price contends that the evidence was insufficient to support his conviction for burglary because the State failed to prove an essential element of the crime, specifically that he entered the house with the intent to commit a theft therein. He further argues that even if there was circumstantial evidence to support the element of intent, the State failed to exclude other reasonable hypotheses of Price's innocence.

A person commits burglary by entering or remaining within the premises of another without authority and with the intent to commit a felony or theft therein. OCGA § 16-7-1 (a).

> Whether the defendant entertained an intent to commit a theft after entering is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent. And the fact that the defendant may have failed in accomplishing his apparent purpose does not render a finding of burglary improper.

(Citation omitted.) *Nelson v. State*, 277 Ga. App. 92, 95 (1) (a) (625 SE2d 465) (2005).

Price testified at trial that he was helping his mother look for a home to buy, and on the afternoon of the incident he test drove his sister's car after putting on new brake pads. The two other suspects, who were friends, were with him. Price testified that he saw a sign on the street that he "thought said for sale by owner," and that one of the men said that he knew the owner. He backed into the driveway and saw that the basement door was open, as well as the garage door. He further testified that there was no furniture in the house and that there were clothes and papers all over the floors. Price said that he called his mother and walked around the house describing it to her, and that he was on the phone with her when the daughter came in and started screaming. When the father came inside, Price testified that he tried to explain to him that he was there to look at the house because he thought it was for sale.

The father, mother, and daughter all testified that there were no "for sale" signs in the yard and that the house was not for sale. Pictures taken at the scene also show that there were no signs indicating that the house was for sale.

"When the evidence is entirely circumstantial . . . a conviction will be sustained only if the proven facts are both consistent with the hypothesis of guilt, and also exclude every other reasonable hypothesis except the guilt of the accused." (Punctuation omitted.) *Miller v. State*, 265 Ga. App. 402, 403 (1) (593 SE2d 943) (2004). Here, however, there was direct evidence pertaining to the burglary count

in the form of eyewitness testimony from the father and daughter who saw Price in the house, the daughter's testimony that she heard Price rummaging through drawers, and Price's admission that he entered the house. Although Price testified that he entered the home only because he thought that it was for sale, a "defendant's explanation may be rejected by the jury where that explanation is inconsistent with other direct and circumstantial evidence." (Citation and punctuation omitted.) *Underwood v. State*, 221 Ga. App. 93, 94 (1) (470 SE2d 699) (1996). Moreover, a jury may infer that a defendant intended to commit theft based on the presence of valuables inside the premises, when the jury concludes that there is no other apparent or credible motive for the defendant's unauthorized entry. See *Legg v. State*, 204 Ga. App. 356, 357 (1) (419 SE2d 151) (1992); *Addis v. State*, 203 Ga. App. 270, 271 (416 SE2d 837) (1992). Given the evidence, the jury was authorized to reject Price's explanation for his entry.

3. Price also contends that the trial court erred by not charging the jury sua sponte on "mistake of fact."

"While a trial court is required to charge on a criminal defendant's sole defense of mistake of fact even absent a request to do so, such a charge is not required where it is not authorized by the evidence." (Citation omitted.) *Randall v. State*, 234 Ga. App. 704, 705 (1) (507 SE2d 511) (1998). "A mistake of fact is defined as 'a misapprehension of fact which, if true, would have justified the act or omission.' OCGA § 16-3-5." (Citations and punctuation omitted.) *Turner v. State*, 210 Ga. App. 303, 304 (1) (436 SE2d 229) (1993). It is a defense to the extent ignorance of some fact negates the mental state required to establish a material element of the crime. *Jones v. State*, 263 Ga. 835, 839 (2) (439 SE2d 645) (1994).

Here, although Price admitted entering the house, he denied committing the burglary and maintained that he believed the house was for sale. "One cannot deny committing an act, while at the same time argue he committed the act by mistake." *Williams v. State*, 221 Ga. App. 296, 297 (1) (471 SE2d 258) (1996). Moreover, because Price admitted to being inside the victim's house, his defense went to the intent element of the burglary charge, specifically that he did not intend to commit a theft or felony inside the house, and that he did not have an unlawful purpose for entering the victim's house. This defense was fairly covered by the jury instructions which explained that, with respect to the burglary, "intent to commit a theft is an essential element of the criminal offense of burglary and must be proven by the State of Georgia by evidence beyond a reasonable doubt."

Accordingly, as a charge on mistake of fact was not authorized by the evidence, and Price's defense was "fairly covered by the charge

on the elements of the [crime]," the court did not err in failing to give those additional instructions. See *Curtis v. State*, 285 Ga. App. 298, 301 (1) (a) (645 SE2d 705) (2007).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 23, 2010 —
RECONSIDERATION DENIED APRIL 8, 2010 — 

*Adam S. Levin*, for appellant.

*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.