**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 25, 2014**

# In the Court of Appeals of Georgia

A14A0358. EASTER v. THE STATE.

BRANCH, Judge.

Andra Easter was tried by a Richmond County jury and found guilty of one count of burglary[1] and one count of aggravated assault.[2] He now appeals from the denial of his motion for a new trial, arguing that the trial court's jury charge violated his due process rights by allowing the jury to convict him of committing both burglary and aggravated assault by a method not alleged in the indictment. Easter further contends that the trial court erred in instructing the jury that it should first consider whether Easter was guilty of burglary before considering the lesser included offense of criminal trespass. For reasons explained below, we reverse the trial court's denial

---

[1] OCGA § 16-7-1 (a).

[2] OCGA § 16-5-21 (a) (2).

of Easter's motion for a new trial as to the charge of aggravated assault, but affirm the denial of that motion as to the charge of burglary.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Marriott v. State*, 320 Ga. App. 58 (739 SE2d 68) (2013) (citation omitted). So viewed, the record shows that Easter's victim was his former girlfriend, DeShawn Coatney. Easter had lived with Coatney at her residence for approximately 18 months before the couple broke up in January 2006. Evidence of prior difficulties between the couple was introduced at trial and showed that after Easter moved out of Coatney's residence, Coatney had to call police several times because of Easter's harassing and sometimes violent behavior. According to Coatney, during the approximately six weeks between the end of the couple's romantic relationship and the incident at issue, she called police to her home on three or four occasions because Easter had appeared at her residence uninvited and refused to leave. Additionally, because Easter was consistently attempting to gain entrance to the house, Coatney had to change the locks on her residence several times in the span of a few weeks. An officer with the Richmond County Sheriff's Department testified that on February 6, 2006, he responded to a call regarding a domestic dispute at

Coatney's residence. Coatney explained to the officer that Easter had been coming to her house repeatedly and trying to gain entrance and that on the night in question he had broken the screen door. The officer observed that the door had been damaged and the handle broken off. Another local police officer testified that on February 17, 2006, he responded to a call placed by Coatney regarding a traffic incident. Coatney reported that Easter had followed her home from work, rammed her car with his, and then attempted to break her car window with a crowbar. The officer noted damage to the rear bumper of Coatney's car and to one of the car's headlights and also observed that the passenger side mirror appeared to have been "knocked off" with an "object."

On the same night as the traffic incident, someone had broken a front window on Coatney's house while she was at work. Before she left for work the following evening, Coatney rearranged the curtains on the broken window to cover the break. Coatney returned from work in the early morning hours of February 19 and upon entering her house, noticed that the curtains on the broken front window had been disturbed. Afraid that Easter might be in the house, Coatney retrieved a gun she kept hidden on top of her china cabinet and began a room-to-room search of the residence. After approximately 10 minutes of searching, Coatney found Easter hiding under a bed in one of the home's three bedrooms. When Easter came out from under the bed,

3

Coatney saw that he was wearing what she described as "rubber gloves" and holding a crowbar. Coatney then began to back out of the room and Easter began moving towards her, holding the crowbar in an upright position. When Coatney asked what he was doing, Easter did not reply but instead simply continued walking towards Coatney. Fearing that Easter was about to attack her, Coatney fired two shots in his direction. A wounded Easter then fled the residence and Coatney called the police. After speaking with Coatney, officers began searching a wooded area near the residence for Easter, who eventually surrendered to police and was later charged with aggravated assault and burglary.

Easter testified in his own defense and admitted that he had entered Coatney's home on the night in question through the broken front window. Easter explained, however, that he had gone to the home because he had learned it had been broken into the night before, he had property at the residence, and he feared the intruders would return to burglarize the house.[3] Sometime after he entered the residence, Easter heard a noise and then retrieved the crowbar from his car to use for his own protection. After he had "secured the house," Easter decided to stay until Coatney returned from work

---

[3] Coatney testified that Easter did not have any belongings at her house on the night in question.

to help protect both Coatney and the property. Easter decided to wait in a bedroom, however, so that Coatney would not be alarmed by him when she came through the front door. And once Coatney returned from work, Easter decided to wait for her to discover him in the bedroom, rather than coming out and startling her. According to Easter, when Coatney confronted him with the gun, Easter told her that he was not there to hurt her, but instead wanted to talk "like two mature adults, to sit down and talk." Easter denied that he had any intent to harm Coatney that night, explaining that he loved her too much to hurt her.

At the charge conference following the close of the evidence, the trial judge agreed to charge the jury on criminal trespass as a lesser included offense of burglary. After extensive discussion with counsel concerning the verdict form, the parties agreed that burglary would appear before criminal trespass on that form and that the trial court would tell the jury to consider criminal trespass only if it found Easter not guilty of burglary. Thus the trial court charged the jury: "If you find that [Easter] is not guilty of the offense of burglary, you may consider a lesser offense of criminal trespass." The trial court subsequently gave the jury a sequential charge, telling the jury that it should first consider Easter's guilt as to the offense of burglary, and that

it should consider the crime of criminal trespass only if it found Easter not guilty of burglary.

When charging the jury on both burglary and aggravated assault, the trial court charged the relevant code sections in their entirety. Thus, the jury was instructed that a person commits burglary "when, without authority, that person enters or remains in any . . . dwelling place of another person . . . with the intent to commit a felony." And with respect to aggravated assault, the court charged the jury, in relevant part, that "[a] person commits . . . aggravated assault when that person assaults another person with a deadly weapon or with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." The court then further instructed the jury that:

> The crowbar . . . is not a deadly weapon per se, but may or may not be used as a deadly weapon depending upon the manner in which it is used in the circumstances of the case. Whether or not, under all the circumstances and facts of this case, the crowbar alleged in the Bill of Indictment . . . did, in fact constitute a deadly weapon or a weapon likely to cause serious bodily injury is a matter to be decided by you.

Defense counsel offered no objection to any of these charges.

After deliberating for approximately one hour, the jury sent a note to the judge asking if it could have a copy of the law defining aggravated assault and burglary. The trial judge conferred with counsel and decided that he would recharge the jury on both offenses. At this point, defense counsel noted for the first time that the indictment charged Easter with committing burglary by "entering" Coatney's home with intent to commit a felony, but not by "remaining" there with such intent. Trial counsel further noted that the indictment charged Easter with committing aggravated assault by using "a crowbar, an object which[,] when used offensively against another person is likely to result in serious bodily injury," and that it did not charge Easter with committing aggravated assault by use of a deadly weapon. Noting that the jury had already been deliberating for an hour, that it could not "unring the bell," and that it feared confusing the jury, the trial court recharged the jury using its original charges as to aggravated assault and burglary, but noted defense counsel's objections for the record.

When the jury came back with its verdict, the verdict form reflected that the jury found Easter guilty of burglary, not guilty of criminal trespass, and guilty of aggravated assault. The trial court explained to the jury that its verdicts as to the counts of burglary and criminal trespass were inconsistent and sent the jurors back to

7

the jury room for further deliberations. The jury thereafter returned a verdict finding Easter guilty of both burglary and aggravated assault and making no finding as to the lesser included offense of criminal trespass.

Easter was convicted in June 2007 and shortly thereafter he filed his original motion for a new trial. Easter was released from prison and was on a supervised reprieve for medical reasons from November 8, 2010, through February 8, 2012, the date on which he was paroled. He filed an amended motion for a new trial on October 2, 2012, asserting error by the trial court in instructing the jury. The trial court heard that motion on May 9, 2013, and denied the same eight days later, on May 17. This appeal followed.

1. As the Supreme Court of Georgia has previously explained, "[a] criminal defendant's right to due process may be endangered when, as here, an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment." *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999), citing *Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995) (citations omitted). On appeal, Easter asserts that the jury charge violated his due process rights because the charge allowed the jury to convict him of both

aggravated assault and burglary by a method not alleged in the indictment. In analyzing these claims, we note that a due process violation will be found where the trial court gives a jury instruction "which deviates from the indictment[,]" in that "there is evidence to support a conviction on the [unindicted] manner of committing the crime[,] and the jury is not instructed to limit its consideration to the manner specified in the indictment." Id., citing *Dukes*, 265 Ga. 422.

(a) The relevant portion of the Georgia code section defining aggravated assault provides that a person commits that crime "when he or she assaults. . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). The indictment at issue charged Easter with committing an aggravated assault on Coatney "with a crowbar, an object which when used offensively against another person is likely to result in serious bodily injury." As noted earlier, however, when charging the jury the trial court read OCGA § 16-5-21 (a) (2) in its entirety, thereby including the "deadly weapon" reference which was not a part of the indictment. Moreover, in conjunction with the jury charge on aggravated assault, the trial court further instructed the jury that while a crowbar was not a "deadly weapon per se," it was for the jury to decide whether it constituted such a

9

weapon in this case, given the evidence presented at trial. That evidence showed that Easter had engaged in a pattern of harassing and violent behavior towards Coatney; that his violence towards her had escalated in recent days; that he entered her house that night wearing rubber gloves and armed with a crowbar; that he hid himself and lay in wait for Coatney; and that when she confronted him, Easter began moving towards Coatney with the crowbar raised. Given this evidence, and reading the jury charge as a whole, we must conclude that the charge allowed the jury to find that Easter had committed aggravated assault by a method not charged in the indictment, i.e., by using a deadly weapon rather than merely an object likely to result in serious bodily injury.

Citing *Mikell v. State*, 286 Ga. 722 (690 SE2d 858) (2010), the State argues that the error in the trial court's charge did not violate Easter's due process rights, as it was cured by the trial court's instruction that the State bore the burden of proving "every material allegation in the Bill of Indictment . . . beyond a reasonable doubt" and by providing the jury with a copy of the indictment. We disagree. In *Mikell*, the indictment against the defendant had charged him with committing burglary by one specific method; when instructing the jury, however, the trial court erroneously charged the entire burglary statute. In analyzing the defendant's ineffective assistance

10

claim based on his trial counsel's failure to object to the erroneous charge, our Supreme Court found that the trial court cured its error by "provid[ing] the jury with the indictment and instruct[ing] jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Id. at 724 (2) (b) (citations omitted). We find *Mikell* to be factually distinguishable, however, because the jury charge in this case emphasized that Easter could have committed aggravated assault by a method not alleged in the indictment, by specifically instructing the jury that it could find that a crowbar constituted a deadly weapon. Furthermore, although it had the opportunity to do so, the trial court specifically declined to give a curative instruction, reasoning that such an instruction might confuse the jury. Instead, the court gave the erroneous instruction on aggravated assault a second time. And when doing so, the trial court did not recharge the jury as to the State's burden to prove the crime as alleged in the indictment. Thus, "[i]f anything, the recharge confirmed in the jurors' minds that they could consider aggravated assault with [a deadly weapon] as [an] alternative [method] of committing aggravated assault." *Blige v. State*, 208 Ga. App. 851, 852 (2) (432 SE2d 574) (1993). See also *Milner v. State*, 297 Ga. App. 859, 860-861 (1) (678 SE2d 563) (2009) (noting that the trial court's original error in instructing the jury that the

11

crime could be committed by a method not alleged in the indictment "was aggravated by the court's recharge to the jury" in which it repeated its error) (citation omitted).

Given the evidence presented at trial and the absence of any meaningful limiting or curative jury instruction, we must conclude that the erroneous jury charge on aggravated assault resulted in "a reasonable probability . . . that the jury convicted [Easter] of committing [aggravated assault] in a manner not charged in the indictment." *Hopkins v. State*, 255 Ga. App. 202, 206 (2) (564 SE2d 805) (2002) (punctuation and footnote omitted). See *Harwell*, 270 Ga. at 767 (1) (reversing defendant's conviction for aggravated assault where the indictment charged him with assault with a deadly weapon, the trial court charged the code section in its entirety, and the evidence was sufficient to support a conviction for assault with an object likely to cause serious bodily injury); *Blige*, 208 Ga. App. at 852 (2) (reversing aggravated assault conviction where indictment charged commission of the crime by one method and the trial court "did not merely read to the jury the entire Code section defining aggravated assault, but actually emphasized a method of committing the crime not specified in the indictment"). Accordingly, because the jury charge as to aggravated assault violated Easter's due process rights, his "aggravated assault

conviction must be reversed and the sentence vacated." *Harwell*, 270 Ga. at 768 (1), citing *Dukes*, 265 Ga. at 424 (footnote omitted).

(b) At the time Easter committed the crimes at issue, Georgia law provided, and the trial court instructed the jury, that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony . . . therein, he enters or remains within the dwelling house of another." OCGA § 16-7-1 (a) (2006).[4] The indictment at issue, however, charged Easter with committing burglary only by entering the "dwelling house of Coatney" with "the intent to commit [the] felony [of] Aggravated Assault therein," and not with remaining in the dwelling with such intent. Based on the record, we find that the discrepancy between the crime as charged in the indictments and the instructions given to the jury did not result in a violation of Easter's due process rights. This finding results from the fact that the evidence presented at trial did not support a conviction of Easter on the alternate, unindicted crime of committing burglary by remaining in Coatney's house with felonious intent.

---

[4] The burglary statute has since been amended to provide for the offenses of burglary in the first degree (which involves entry into the dwelling place of another) and burglary in the second degree (which involves entry into any building not used as the dwelling place of another). See OCGA § 16-7-1 (2013).

The difference between the two methods of committing burglary is the point in time at which the defendant formulated his intent to commit a felony. One method contemplates that the defendant entered the dwelling place of another with felonious intent, while the second method contemplates that the defendant formulated that intent after he entered the dwelling and, having formed the intent to commit a felony, thereafter remained in the dwelling for the purpose of acting on that intent. See generally, *Joyner v. State*, 267 Ga. App. 309, 310 (1) (599 SE2d 286) (2004) (the requisite intent for commission of burglary can be formed either at the time the perpetrator makes his unauthorized entry into the premises or at some point "thereafter[,] while the perpetrator is remaining on the premises"). In this case, the only direct evidence of Easter's intent was Easter's testimony, in which he denied any intent to harm Coatney. The jury, however, clearly rejected this testimony. Moreover, the evidence showed that Easter entered the house when Coatney was not present, equipped with rubber gloves and armed with a crowbar. This circumstantial evidence supports the conclusion that Easter entered the house intending to assault Coatney. There is no evidence from which the jury could have inferred that Easter did not formulate the intent to commit an assault until some time after he entered the residence. In short, "the evidence presented at trial supported two alternative theories:

14

either that [Easter] committed no offense at all, or that he committed the crime of [burglary] as alleged in the indictment" by entering Coatney's dwelling with the intent to commit aggravated assault against her. *Tidwell v. State*, 312 Ga. App. 468, 472 (2) (718 SE2d 808) (2011) (citation and punctuation omitted). Accordingly, we find no reasonable possibility that the jury convicted Easter of burglary by a manner not charged in the indictment, and therefore affirm the trial court's denial of Easter's motion for a new trial as to that offense. Id. (indictment charged defendant with intentionally terrorizing the victim; in instructing the jury, the trial court charged the entire Code section, which provided that a defendant violated the statute when he acted with the intent to terrorize or with reckless disregard of the risk of causing terror; given that all the evidence showed that defendant acted intentionally rather than recklessly, there was no error in the charge).

2. Easter argues that the trial court erred in charging the jury that it must first decide his guilt as to burglary before considering the lesser included offense of criminal trespass. As Easter acknowledges, however, he did not object to the jury charge at trial. Thus, the charge will provide a grounds for reversal only if it constitutes "plain error." *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b). To demonstrate plain error with respect to a jury charge, it must

15

be shown that the instruction was erroneous, that the error was obvious, and that there is a reasonable probability that the erroneous instruction affected the outcome of trial. Id. at 33 (2) (a). We find no such plain error in this case.

In cases involving one or more lesser included offenses, the trial court may properly give the jury a sequential charge; that is, the court may instruct the jury that it is to consider the greater offense before it considers any lesser included offense. See *Camphor v. State*, 272 Ga. 408, 414-415 (6) (d) (529 SE2d 121) (2000); *Cantrell v. State*, 266 Ga. 700, 703, n.3 (469 SE2d 660) (1996); *State v. Nicholson*, 321 Ga. App. 314, 320 (2) (739 SE2d 145) (2013). "A trial court may not, however, instruct the jury that it must reach a unanimous verdict on the greater offense before considering the lesser [included] offense." *Armstrong v. State*, 277 Ga. 122, 123 (2) (587 SE2d 5) (2003) (footnote omitted). As our Supreme Court explained in *Cantrell*, such a unanimity requirement as to the greater offense creates the possibility that the jury will return a verdict that is not truly unanimous:

> Under a unanimity requirement the lesser offense cannot even be considered until the whole jury votes to acquit the defendant of the greater offense. Jurors favoring the lesser offense, unless they can dissuade those favoring the greater, must either hold out until a mistrial is declared because of the deadlock or surrender their opinions and vote for the greater offense. Members of the jury who have substantial doubts

16

about an element of the greater offense, but believe the defendant guilty of the lesser offense, may very well choose to vote for conviction of the greater rather than to hold out until a mistrial is declared.

*Cantrell*, 266 Ga. at 702 (citations and punctuation omitted).

In this case, the trial court gave the following sequential charge when explaining the verdict form to the jury:

> The first issue you will address is the charge in Count One of burglary. And if you find from the evidence and the law that I have given you that the defendant is guilty beyond a reasonable doubt, you will check the block guilty. If you find from the evidence and the law . . . that the defendant is not guilty . . . as to the charge of burglary, you would check the block not guilty. If you check the block not guilty for burglary, only then would you move on to the lesser offense of criminal trespass. If you find the defendant guilty of burglary, you would skip over criminal trespass. If you find the defendant not guilty of burglary, then you may consider the issue of criminal trespass as I have defined it for you.

The court subsequently reiterated: "If you find [Easter] guilty of burglary, you must skip over criminal trespass [on the verdict form]. If you find him not guilty of burglary, you must address criminal trespass."

Easter argues that the foregoing charge constitutes reversible error because it effectively required the jury to reach a unanimous verdict of acquittal as to the

17

burglary charge before considering the lesser included offense of criminal trespass. In support of this argument, Easter relies on *Kunselman v. State*, 232 Ga. App. 323 (501 SE2d 834) (1998), a case which also involved a challenge to a sequential charge as to burglary and the lesser included offense of criminal trespass. In *Kunselman*, the trial court instructed the jury that "'if you find the defendant not guilty of burglary, you would *then and only then* be authorized to consider the lesser included offense of criminal trespass on that count.'" Id. at 324 (1) (citation and footnote omitted; emphasis supplied). Shortly after giving this charge, the trial court "gave the usual pattern charge requiring an unanimous verdict, instructing, '[w]hatever your verdict is, it must be unanimous, that is, agreed to by all 12 of you.'" Id. at 325 (1). We found that when read together, these instructions violated the unanimity rule set forth in *Cantrell* because

> a jury faithfully following these instructions would have to render a unanimous verdict on the burglary charge before considering the criminal trespass charge. No jury could innately comprehend that unanimity was required on all occasions except when acquitting a defendant in the context of considering a lesser included offense.

Id.

18

Citing the "then and only then" language relied on by the analysis in *Kunselman*, Easter argues that the trial court's instruction to the jury in his case that "[i]f you check the block not guilty for burglary, only then would you move on to the lesser included offense of criminal trespass," constitutes plain error and requires us to reverse his conviction for burglary. Having examined all of the relevant case law decided after *Kunselman*, we disagree.

Since the decision in *Kunselman*, both the Georgia Supreme Court and this Court have repeatedly held that sequential jury charges which employ mandatory language such as "only if" or "then" do not constitute reversible error, plain or otherwise, unless the charge as a whole compels "'the jury to reach a unanimous verdict on the greater offense before it may consider the lesser offense.'" *Nicholson*, 321 Ga. App. at 319 (2) (citation omitted) (finding no plain error where the trial court instructed the jury it could consider the lesser included offenses of simple assault and simple battery "only if" it found the defendant not guilty of aggravated assault and aggravated battery). See also *Arrington v. Collins*, 290 Ga. 603, 607-608 (3) (724 SE2d 372) (2012) (finding no reversible error where trial court instructed jury "that it could consider the lesser-included offense of simple possession *if it first found* [defendant] not guilty of trafficking," because charge as a whole did not require a

19

unanimous finding of not guilty as to trafficking before jury could consider offense of possession) (citation and punctuation omitted; emphasis supplied); *Dockery v. State*, 308 Ga. App. 502, 504-505 (1) (707 SE2d 889) (2011) (declining to reverse under *Cantrell* where "jury was instructed to consider the lesser offense of possession of methamphetamine *only if* they did not believe beyond a reasonable doubt that [defendant] was guilty of possession of methamphetamine with intent to distribute," because charge as a whole did not require jury to unanimously acquit on greater offense before considering the lesser offense) (footnote omitted; emphasis supplied); *Allison v. State*, 259 Ga. App. 775, 779 (4) (577 SE2d 845) (2003) (same; sequential charge instructed jury "to consider the lesser offense of possession of cocaine *only if* they did not believe beyond a reasonable doubt that defendants were guilty of conspiracy to traffic in cocaine") (emphasis supplied).

The jury charge in this case, when read as a whole, cannot be fairly interpreted as requiring the jury to reach a unanimous verdict of acquittal on the burglary charge before considering the lesser offense of criminal trespass. Although the trial court did give a charge on unanimity, that charge was not given in conjunction with the sequential charge and it simply required that the jury's final verdict, as reflected on

20

the verdict form, be unanimous.[5] Moreover, as noted above, the jury returned a verdict of not guilty on the charge of criminal trespass and guilty on the charge of burglary. The trial court refused to accept this verdict, and sent the jury back to deliberate further. At that time, the trial court instructed the jury "my instructions to you earlier today in the charge was that if you find beyond a reasonable doubt, all 12 of you, that the defendant *is guilty* of burglary, then you must move on and skip over criminal trespass. You could only address criminal trespass if you found him not guilty of burglary." (Emphasis supplied.) Thus, the trial court made clear to the jury that they should consider criminal trespass only if they could not reach a unanimous verdict of guilt as to burglary. Accordingly, viewing the charge as a whole and in light of all the relevant case law, we find that the charge in this case is more akin to the charges allowed by the decisions in *Arrington*, *Nicholson*, *Dockery*, and *Allison* than to the charge disapproved in *Kunselman*. The court here "did not instruct the jury that it had to reach a unanimous verdict [of acquittal] on the greater offense before it could consider the lesser offense . . . . Instead, the instructions merely required a unanimous verdict as a whole." *Nicholson*, 321 Ga. App. at 320 (2) (citations and punctuation

---

[5] The trial court charged the jury: "Whatever your verdict is, it must be unanimous. That is, it must be agreed upon by all 12 of you."

21

omitted). See also *Armstrong*, 277 Ga. at 123 (2) (no reversible error where "[t]he record . . . demonstrates that neither the trial court nor the verdict form required the jury to reach a unanimous verdict [of acquittal] on the greater offense before considering the lesser-included offense").

For the reasons set forth above, we reverse Easter's conviction for aggravated assault and therefore reverse that part of the trial court's order denying his motion for a new trial on that offense. We affirm, however, Easter's conviction for burglary and therefore affirm that part of the trial court's order denying his motion for a new trial on that offense.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Boggs, J., concur.*