**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 30, 2025**

# In the Court of Appeals of Georgia

A25A1424. CRABBE v. THE STATE.

DILLARD, Presiding Judge.

After a trial by jury, Clayton Louis Crabbe was convicted on one count of first-degree burglary. Crabbe appeals from this conviction and the trial court's denial of his motion for new trial, arguing (1) the trial court erred in instructing the jury on a manner of committing the crime other than as it was alleged in the indictment, and (2) there was a fatal variance between the allegations in the indictment and the evidence presented at trial. For the following reasons, we reverse the judgment and vacate Crabbe's sentence.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the afternoon of August 17, 2020, Garden City police officers were dispatched to a home at 2620 Highway 80 due to a reported burglary. Inside the home were four members of the Taylor family between the ages of 13 and 18, and one of their friends. The family moved into the home the day before, and so the house's interior was cluttered—at least one room was unfurnished—and the exterior had overgrown landscaping.

Before the reported burglary, a manager for a dollar store located on Highway 80 confronted Crabbe for attempting to shoplift a pair of shorts. In response, Crabbe fled with the clothes to a nearby residential area and entered the Taylor residence.

Approximately an hour later, Anaya Taylor—who was 13—found Crabbe in one of the home's bedrooms, where she observed broken glass on the floor from the window. Crabbe asked to use Anaya's cell phone and offered her $100 in exchange for retrieving his car from the dollar store, where he said that he "had done something dumb." After Crabbe returned Anaya's phone, she immediately texted her sister

_____

[1] *See, e.g.*, *Sermons v. State*, 294 Ga. App. 293, 293 (669 SE2d 210) (2008) ("[W]e review the evidence in the light most favorable to the jury's verdict.").

Saddie, alerting her that a man had broken into their home. Saddie then notified their brother Mark of the break in, and Mark instructed her to call 911.

Mark confronted Crabbe when he walked in the home's living room wearing some of Mark's clothes.[2] And wanting to protect his family, Mark told Crabbe to leave. But by that time, law enforcement had arrived, so Crabbe went into a bathroom instead. And Crabbe remained locked in the bathroom until he was eventually detained by officers.

Crabbe was later indicted on one count of burglary in the first degree. The jury found him guilty, and the trial court denied his motion for new trial. This appeal follows.

On appeal from a criminal conviction, a defendant no longer enjoys a presumption of innocence, and we do not weigh the evidence or decide witness credibility.[3] Instead, we determine whether, "based on the evidence presented, a

---

[2] Crabbe left his own clothes—which matched those worn by the suspect in the dollar-store incident—on the floor of the bedroom where Anaya found him.

[3] *See Sermons*, 294 Ga. App. at 293 ("On appeal, we review the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court does not weigh the evidence or determine witness credibility." (punctuation omitted)).

rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt."[4] With these guiding principles in mind, we turn to Crabbe's enumerations of error.

1. Crabbe argues the trial court erred in instructing the jury on a manner of committing the crime of first-degree burglary other than the manner alleged in the indictment. We agree.

Burglary in the first degree is committed by a person when, "without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . ."[5] Significantly, whether the defendant "entertained an intent to commit a theft after entering is a matter for the jury to say, under the facts and circumstances proved."[6]

---

[4] *Id.* (punctuation omitted).

[5] OCGA § 16-7-1 (b).

[6] *Nelson v. State*, 277 Ga. App. 92, 95 (1) (a) (625 SE2d 465) (2005) (punctuation omitted), *disapproved of on other grounds by Nordahl v. State*, 306 Ga. 15 (829 SE2d 99) (2019); *accord Taylor v. State*, 325 Ga. App. 736, 737 (754 SE2d 781 (2014).

And generally, the State must prove intent—out of necessity—from circumstantial evidence.[7]

Here, Crabbe was indicted for first-degree burglary because he "did unlawfully and without authority and *with the intent to commit a theft therein*, enter the dwelling of another."[8] And while the State claims that—despite the wording of the indictment—it could prove Crabbe's intent to steal Mark's clothes arose while remaining on the premises, this contention is a nonstarter.

As we have explained, there are two methods of committing burglary, with the difference being "the point in time at which the defendant formulated his intent to commit a felony."[9] One method involves a defendant entering the dwelling of another with "felonious intent," while the second method considers the defendant

---

[7] *See Nelson*, 277 Ga. App. at 95 (1) (a) ("As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent."); *Chambers v. State*, 361 Ga. App. 139, 143 (863 SE2d 387) (2021) (same); *Taylor*, 325 Ga. App. at 737 (same); *see also Daniel v. State*, 301 Ga. 783, 787 (III) (804 SE2d 61) (2017) (noting that "[g]enerally speaking, in a burglary trial a jury must, of necessity, find intent to commit a felony on the basis of circumstantial evidence." (punctuation omitted)).

[8] (Emphasis supplied).

[9] *Easter v. State*, 327 Ga. App. 754, 761 (1) (b) (761 SE2d 149) (2014), *reversed on other grounds by* 297 Ga. 171 (773 SE2d 181) (2015), *and vacated by* 335 Ga. App. 226 (780 SE2d 822) (2015).

formulating that intent "after he entered the dwelling and, having formed the intent to commit a felony, thereafter remained in the dwelling for the purpose of acting on that intent."[10] Needless to say, a criminal defendant's right to due process may be endangered when "an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment."[11]

In this matter, the record shows that—during the charge conference—the State asked the jury to be charged as to burglary with intent having been formed before entry (as Crabbe was indicted). As a result, the trial court initially charged the jury as follows: "For burglary in the first degree[,] the State must prove that the defendant entered the dwelling of someone else without authority and with the intent to commit

---

[10] *Id.*; *see Stephens v. State*, 232 Ga. App. 738, 739 (1) (503 SE2d 643) (1998) (rejecting appellant's assertion that evidence was insufficient to support his burglary conviction when he did not enter building with intent to steal because, "[e]ven if [he] did not intend to steal anything from inside the school when he initially entered it, intent to steal need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises," and doing so with no mention of the manner in which appellant was alleged to have committed burglary).

[11] *Easter*, 327 Ga. App. at 758 (1); *accord Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

theft." The court also charged that "[w]here there seems to be no other reason for entry, you may conclude the defendant intended to steal if he made entry without authority, and items of some value were found inside." Additionally, the court charged that the jury would be authorized to find Crabbe guilty if they found beyond a reasonable doubt that he "commit[ed] the charged offenses in the manner as alleged in the indictment." And the court charged the jury that the State must prove every essential element of the indictment. At the conclusion of the charges, there were no objections by Crabbe or the State.

Despite these instructions, during deliberations, the jury asked whether intent could be formed "after entering the unit."[12] The trial court again read the indictment to the jury. The court also repeated its earlier charge as to burglary. But then, in direct response to the jury's question, the court explained that, under Georgia law, "[t]he requisite intent necessary for commission of burglary in the first degree need not be formed at the precise moment of entry but can be formed thereafter while the perpetrator is remaining on the premises." The court concluded its remarks by

---

[12] The State argued in the second half of its closing argument, without objection, that intent *could* be formed once inside the building. This contradicted its argument in the first portion of its closing when the prosecutor asserted the State was required to prove there was intent before entry.

reminding the jury that "all of [its] other instructions . . . continue[d] to apply to this case including all the definitions of everything and the need for the [S]tate to prove each essential element of the crime alleged beyond a reasonable doubt." Ultimately, the jury returned a verdict of guilty.

Crabbe now complains about the trial court's direct response to the jury which, while a correct statement of the law, explained that intent could be formed *after* his entry into the dwelling. The State compares these circumstances to those in *Wood v. State*,[13] in which we rejected the defendant's claim that the trial court "erred in charging the jury that the intent necessary for the commission of burglary need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator remains on the premises" when the indictment alleged the defendant "entered the victims' house with the requisite intent."[14] More precisely, in *Wood*, we considered the enumerated error "specious" because (1) the trial court read the indictment to the jurors, (2) the court instructed the State "had the burden of proving beyond a reasonable doubt all the essential elements of the crime as alleged in the

---

[13] 239 Ga. App. 707, 709 (4) (522 SE2d 51) (1999).

[14] *Id.* at 710 (4).

indictment," (3) the jurors had a copy of the indictment with them during deliberations, and (4) the jurors wrote the guilty verdict on the face of the indictment.[15] So, we determined that, "[c]onsidering the entire charge, it [was] apparent that the court properly limited the jury's consideration to the manner of burglary set forth in the indictment."[16]

We disagree with the State, then, that the facts here are a "mirror image" of those in *Wood*. Here, the jury was certainly instructed that the State was required to prove every essential element of the crime *as alleged*, and the jury was read the language of the indictment more than once—including after it asked whether intent for burglary could be formed "after entering the unit." But in answering the jury's question in the affirmative, the trial court did not instruct that it was precluded from considering this alternative method when Crabbe's indictment alleged that intent was formed *before* entry.[17] Thus, unlike in *Wood*, the trial court's extraneous instruction

---

[15] *Id.*

[16] *Id.*

[17] *See Milner v. State*, 297 Ga. App. 859, 860-61 (1) (678 SE2d 563) (2009) (reversing for a new trial when trial court "did not give a limiting instruction to ensure that the jury would find [defendant] guilty of terroristic threats in the specific manner charged in the indictment," nor did trial court "instruct the jury not to consider

was given in direct response to a question from the jury *during deliberations* about when intent could be formed for burglary, indicating the jury was confused. And the giving of a jury instruction which "deviates from the indictment violates due process [when] there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment."[18]

We cannot conclude, then, that the giving of the instruction on the second method of committing burglary was harmless. Indeed, in stark contrast with *Wood* (in which several accomplices testified about the plan to burglarize a residence),[19] the evidence of forming intent *before* entry was not overwhelming in this case. Here, Crabbe's defense was that he did not enter the residence—which he purportedly believed was abandoned—with any intent to steal but to hide from law enforcement

---

terroristic threats as having occurred in another manner").

[18] *Tidwell v. State*, 312 Ga. App. 468, 471 (2) (718 SE2d 808) (2011) (punctuation omitted); *accord Harwell*, 270 Ga. at 766 (1).

[19] *See* 239 Ga. App. at 708 (1), 710 (4) (explaining that evidence was overwhelming when there was testimony by two of four burglary accomplices that the group of five went to house for the purpose of burglarizing, tried several methods of entering home, stole various items, left house with the stolen items, and then returned a short time later to steal more items).

after running from the dollar store. And there was testimony that when Anaya discovered Crabbe in the house, he told her he had been there "for a while" and was hiding from law enforcement. Also, when Sadie spoke with officers, she told them Crabbe was in the house to hide from them. Finally, there was evidence that an hour passed between the time Crabbe fled from the dollar store toward the residential area and was located inside the Taylor home. Still, when he was found, Crabbe was wearing clothes that belonged to Mark. So, even if the jury believed Crabbe did not initially enter the residence with the intent to steal, it could have concluded the intent to take Mark's clothing arose while he remained on the property, allegedly hiding from police.[20]

---

[20] *Cf. Easter*, 327 Ga. App. at 761 (1) (finding no reasonable probability that jury convicted defendant on a manner of committing burglary that was not charged in the indictment when evidence showed defendant "entered the house when [the resident] was not present, equipped with rubber gloves and armed with a crowbar" which "support[ed] the conclusion that [defendant] entered the house intending to assault [the resident]" and there was *no* evidence "from which the jury could have inferred that [defendant] did not formulate the intent to commit an assault until some time after he entered the residence"); *Tidwell*, 312 Ga. App. at 472 (2) (holding that any error was harmless when trial court charged two methods of committing crime but "the evidence presented at trial supported two alternative theories: either that appellant committed no offense at all, or that he committed the crime of terroristic threats as alleged in the indictment" (punctuation omitted)).

Thus, because the trial court's charge and the evidence presented at trial could have permitted the jury to find that Crabbe committed the offense of burglary in a manner other than that alleged in the indictment, we reverse his conviction and vacate his sentence.[21]

2. In his final enumerated error, Crabbe complains that—because of a fatal variance between the evidence presented at trial and the manner in which he was alleged to have committed the crime—the trial court erred in denying his motion for directed verdict as to burglary when the State failed to present evidence of his intent to steal arising before entry into the Taylor home. We disagree.

This Court reviews the denial of a motion for directed verdict of acquittal "under the same standard as that for determining the sufficiency of the evidence to support a conviction."[22] We must determine, then, whether the evidence presented

---

[21] *See Harwell*, 270 Ga. at 767-68 (1) (explaining that "appellant's due process rights were violated by the jury charge given by the trial court, and appellant's aggravated assault conviction must be reversed and the sentence vacated"); *Dukes v. State*, 265 Ga. 422, 423-24 (457 SE2d 556) (1995) (explaining that because appellant's "due process right to notice of the charges brought against him was violated when he was tried on a theft charge that was not alleged in the indictment, his conviction for theft of the bank's car must be reversed").

[22] *Gille v. State*, 351 Ga. App. 875, 875 (1) (833 SE2d 573) (2019) (punctuation omitted); *accord Luy v. State*, 303 Ga. App. 613, 613 (694 SE2d 370) (2010).

at trial, "when viewed in the light most favorable to the verdict[ ], was sufficient to authorize a rational jury to find the appellant guilty beyond a reasonable doubt of the crime[ ] of which he was convicted."[23] And in applying that standard here, the trial court did not err in denying the motion for directed verdict.

Although Crabbe argues there was no evidence that he formed the intent to steal clothing from the Taylor house before entry, the jury saw photographs of the home and its interior, and it could have concluded that Crabbe spotted articles of clothing inside before entry and intended to disguise himself in new clothes while hiding from law enforcement.[24] As a result, the trial court did not err in denying the

---

[23] *Gille*, 351 Ga. App. at 875 (1) (punctuation omitted).

[24] *See Price v. State*, 289 Ga. 459, 459 (1) (712 SE2d 828) (2011) (affirming appellant's conviction for burglary when at trial appellant "asserted that he entered the home through an unlocked door because he thought he saw 'for sale by owner' and 'open house' signs posted in front of the home and was assisting his mother in looking for a house" and that "[t]wo other men, who were with [appellant], testified that they too saw 'for sale' and 'open house' signs," but "the jury apparently rejected this testimony and found [appellant] guilty of burglary and criminal trespass"); *Price v. State*, 303 Ga. App. 589, 592 (2) (693 SE2d 826) (2010) (upholding appellant's burglary conviction when, "[a]lthough [appellant] testified that he entered the home only because he thought that it was for sale, a defendant's explanation may be rejected by the jury where that explanation is inconsistent with other direct and circumstantial evidence" (punctuation omitted)), *reversed on other grounds by* 289 Ga. 459, *and vacated by* 313 Ga. App. 297 (721 SE2d 217) (2011).

motion for directed verdict, and Crabbe can be retried on the indictment of having entered the Taylor property with the intent to steal.

*Judgment reversed and sentence vacated. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*