**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 26, 2013**

# In the Court of Appeals of Georgia

A12A2172. BRAZIEL v. THE STATE

BARNES, Presiding Judge.

Earnest Lee Braziel was indicted for aggravated assault on a peace officer, terroristic threats, simple battery, possession of hydrocodone, possession of alprazolam, possession of marijuana, two counts of obstruction of an officer, and crossing the guard line of a correctional institution with drugs. After a jury trial, Braziel was found guilty of aggravated assault on a peace officer, simple battery, possession of alprazolam, possession of marijuana, and crossing the guard line. The trial court granted Braziel's motion for directed a verdict on the possession of hydrocodone count, and the jury found him not guilty on the counts for obstruction of an officer and terroristic threats. Braziel filed a motion for new trial and, following a hearing, the trial court denied the motion. It is from that order that he now appeals,

contending that the evidence was insufficient to sustain the aggravated assault on a peace officer conviction, and that the trial court erred in its charge on aggravated assault. Following our review, we affirm.

After a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence." *Powell v. State*, 310 Ga. App. 144 (712 SE2d 139) (2011). Moreover, we "do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."(Footnote omitted). Id.

So viewed, the evidence shows that several officers with the Dade County Sheriff's office went to Braziel's grandparents' home where he lived to serve him with a felony arrest warrant. After Braziel was handcuffed, an officer conducted a pat-down search and discovered a bottle with the prescription label removed that contained pills that were later identified as alprazolam, a schedule IV controlled substance.[1] Braziel struggled with the deputy as he was led out of the house, then"threw his head back and head butted [the deputy] in the mouth and . . . [tried] to get away from [him.] As the deputy and Braziel continued to struggle, the deputy

---

[1] OCGA §§ 16-13-28 (a) (1); 16-13-30 (a).

heard Braziel say "sic him boy, get him, sic him." The deputy "took [Braziel] to the ground" to control him until he could get additional help with the arrest. As he held Braziel on the ground, the deputy felt a sharp pain and saw that Braziel's pit bull had "locked down" on his leg. The deputy hit the dog repeatedly with his flashlight as Braziel continued to "holler[] sic him boy, bite him." As the deputy continued to hit the dog, it eventually released its grip, and Braziel's grandfather grabbed the dog and pulled it back.

As the officers restrained Braziel and put him in a patrol car for transport, he continued with a profanity-laden tirade, and spit in the face of another deputy. Braziel also bragged about his dog attacking the deputy. The deputy testified about the wounds to his leg caused by the dog attack. He described areas where puncture wounds had "hit the bone" and another area where because "the meat was gone, they couldn't sew it all the way up, so I still have a hole there."

1. In three enumerations of evidence, Brazeil challenges the sufficiency of the evidence to sustains his conviction for aggravated assault premised on the attack from the dog. He contends that the evidence did not show that he caused the dog to attack the officer and that other factors, including the other officers, patrol cars, and a K-9 dog at the scene could have provoked the dog to attack the officer.

3

"A person commits the offense of aggravated assault when he assaults . . . [w]ith a deadly weapon or with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). The use of a dog can be considered a deadly weapon. *Michael v. State*, 160 Ga. App. 48 (1) (286 SE2d 314) (1981).[2] The officer who was assaulted testified that Braziel yelled to his dog "sic him boy, bite him" before the dog attacked the officer. Another deputy testified that the dog had been aggressive in past encounters at Braziel's home, but that "Braziel ha[d] usually called it off." Despite Braziel's contentions otherwise, this evidence was sufficient to authorize the jury's finding that appellant was guilty of aggravated assault on a law enforcement officer beyond a reasonable doubt. See *Perkins v. State*, 197 Ga. App. 577, 579 (3) (398 SE2d 702) (1990).

2. Braziel also contends that the trial court erred in its instruction to the jury that the aggravated assault could be committed in a way not specified in the indictment.

---

[2] Braziel was indicted for aggravated assault on a peace officer by knowingly making "an assault upon the person of . . . a peace officer, with a dog, an instrument which when used offensively against a person is likely to result in serious bodily injury, by commanding said dog to attack said officer while said officer was engaged in the performance of his official duties."

Our review of the charge demonstrates that the trial court properly instructed the jury that "a person commits the offense of aggravated assault when that person assaults another person with any object, device or instrument that when used offensively against a person is likely to, or actually does result in serious bodily injury." The trial court further instructed the jury that "a dog, if and when used in making an assault upon another person is not a deadly weapon per se. But [it] may or may not be deadly weapon depending on the manner in which it is used and the circumstances of the case." The trial court also instructed the jury that in "deciding whether the alleged instrument was a weapon capable of causing serious bodily injury you may consider direct proof of the character of the weapon, in this case, the dog."

Braziel correctly maintains that a charge that instructs the jury that a crime may be committed in a way not alleged in the indictment is error. We have held that

> it is error to charge the jury that a crime may be committed by alternative methods, when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury.

5

(Citations and punctuation omitted.) *Pettway v. State*, 204 Ga. App. 804 (420 SE2d 619) (1992).

In this case, however, contrary to Braziel's contention that the instruction permitted the jury to convict him of a crime not charged in the indictment, the charge tracked the assault language of OCGA § 16-5-21 (a) (2), under which Braziel was indicted, and addressed the specific instrument of the assault that was alleged in the indictment, assault with "a dog, an instrument which when used offensively against a person is likely to result in serious bodily injury."

Under these circumstances, the trial court did not authorize a conviction in a manner not alleged in the indictment. Compare *Blige v. State*, 208 Ga. App. 851, 852 (432 SE2d 574) (1993) (reversing aggravated assault conviction where instruction emphasized that jury could convict defendant of aggravated assault if it found that he assaulted victim "with intent to rob," rather than with an offensive weapon as alleged in the indictment), (aff'd on other grounds by 264 Ga. 166 (441 SE2d 752) (1994).

*Judgment affirmed. McFadden and McMillian, JJ., concur*.