**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 4, 2024**

# In the Court of Appeals of Georgia

A24A1058. HARVEY v. THE STATE.

PADGETT, Judge.

A jury found Emanuel Deon Harvey, ("appellant") guilty of two counts of aggravated assault, one count of theft by taking, and one count of tampering with evidence.[1] He was sentenced and filed a motion for new trial, which was denied. Appellant appeals from the denial of his motion for new trial. After considering the arguments presented on appeal, we affirm.

---

[1] Appellant was indicted for the offenses of malice murder, three counts of felony murder, three counts of aggravated assault, one count of theft by taking, and one count of tampering with evidence. The jury acquitted appellant of five counts and convicted him of the four counts listed above.

Viewing the evidence most favorably to support the jury's verdict,[2] the evidence adduced at trial shows that, early in the morning of March 29, 2019, appellant accompanied Alexis Brown ("Brown") and her two year old child to the Stallion Motel in Chatham County ("Stallion").[3] The Stallion was operated by the victim in this case. On March 31, 2019, the victim's dead body, which had evidence of burns, was partially nude, and was bound with an electrical cord, was discovered by friends in room nine of the Stallion.

When law enforcement officers arrived, they found the deceased victim in room nine, wearing only a shirt and his legs were bound by an electrical extension cord which had been knotted around the victim's ankles. Officers noticed that a pillow near the victim's head was covered in blood and other substances. Officers also noticed a finger print in blood smeared on the door to the room. Inside the room, officers noted a strong odor of cooking grease, and they found a greasy substance on the victim, the bedding, and the bed itself. Officers also discovered a cooking pot, which was damaged, and a hot plate within the room. They found fingerprints on the mini

---

[2] *Padilla-Garcia v. State*, 372 Ga. App. 9, 9 (903 SE2d 680) (2024).

[3] Brown was an indicted co-defendant in this case. She eventually entered into a plea agreement and testified against appellant during the trial.

refrigerator, toilet, and bathroom vanity. Officers documented the various burns and other injuries to the victim's body.

Inside the Stallion's rental office, law enforcement officers located a DVR, that was still recording. The Stallion was equipped with a multi-camera surveillance system and the officers were able to recover the video from the DVR. At trial, DVR footage was entered into evidence. The footage showed that on March 29, at approximately 7:00 a.m., Brown arrived at the Stallion in her purple Jeep vehicle with a distinctive white hood, and she entered the office. Brown left and began taking personal items and her daughter into room nine shortly thereafter. Appellant is also seen entering into room nine around that time. At around 9:47 a.m., the victim locked the office and walked into room nine. At 10:11 a.m., Brown and her child are seen leaving room nine and walking toward the office of the Stallion. The video captured Brown searching the office and then returning to room nine. A few minutes later, appellant is seen entering the office while the distinctive Jeep is seen driving around the parking lot and stopping near the rear door to the office. Appellant then takes a black, rectangular box from the office after unplugging the box from electrical connections. Appellant then left the office with something concealed in a plastic bag

and entered Brown's vehicle with the bag. The vehicle then leaves the parking lot and is not seen on video again.

A police detective testified that the fingerprint that was found in the blood smear on the front door of room nine belonged to the appellant. Fingerprints from other areas of the room were identified as belonging to Brown. A GBI forensic toxicologist testified that appellant's DNA was found to be present in the blood smear on the door of room nine and the victim's DNA was found to be present in the blood found on appellant's left shoe.

A medical examiner testified that she determined the victim's manner of death to be homicidal violence of undetermined etiology, that the victim suffered various injuries, but that she was unable to definitively identify any of the injuries that she documented on the victim's body to be the direct cause of the victim's death. She testified that it was her opinion that the pillow was used to suffocate the victim in this case.

Brown entered into a plea agreement and testified against appellant. Brown testified that she had an existing friendship with the victim and that on March 29, 2019, the victim agreed that he would pay her for a massage. When the victim came

into room nine for the massage, appellant was hiding in the bathroom of the motel room with Brown's daughter. The victim began removing his clothes and laid on the bed. Before Brown could give the victim a massage, appellant came out of the bathroom with hot grease in a cooking pot that he had been using to fry chicken. Appellant doused the victim with the hot grease, and the two men fought. Appellant repeatedly struck the victim with his hands and with the cooking pot, causing the victim to fall to the ground. Appellant tried to strangle the victim with the extension cord, but the victim stopped him. Appellant forced the victim's head into the pillow, preventing the victim from rising up by placing his body weight on the back of the victim's head. The victim eventually quit moving and died. Brown admitted that she had set up the victim to come into room nine, but claimed that she did not know the appellant planned to kill the victim.

After the victim died, appellant told Brown to take the victim's keys and go into the office of the Stallion to recover the video tape. She returned when she could not find the tape, and appellant went to search for it himself. Brown got her child into her Jeep and waited for appellant while he searched for the tape. Appellant removed equipment from the office, placed it inside a plastic bag, and left the office.. Appellant

said "I got it, I got the tape" after he entered Brown's vehicle. They left the scene and appellant threw the stolen box over a bridge. The jury found appellant not guilty of several counts – including malice and felony murder --- but found him guilty of two counts of aggravated assault, theft by taking, and tampering with evidence. Following the denial of his motion for new trial, appellant appeals.

1. Appellant argues that the evidence presented was insufficient to support the convictions under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). "When this Court reviews the sufficiency of the evidence, we do not 're-weigh the evidence or resolve conflicts in witness testimony but instead defer to the jury's assessment of the weight and credibility of the evidence.'" *Wells v. State*, 371 Ga. App. 440, 442 (1) (900 SE2d 746) (2024) (citation omitted). We review the evidence in a light most favorable to the prosecution and our sole question in this review is whether *any* rational trier of fact could have found the essential elements of the crimes to have been established beyond a reasonable doubt. *Tinson v. State*, 337 Ga. App. 83, 83 (1) (785 SE2d 914) (2016); *Drake v. State*, 363 Ga. App. 653, 655 (1) (872 SE2d 306) (2022). Specifically, appellant argues that there was insufficient evidence to support the verdict as to counts five (aggravated assault), eight

6

(theft by taking), and nine (tampering with evidence) of the indictment, so we will address each of those counts separately.

a. *Count Five - Aggravated Assault*

Count five of the indictment alleged that appellant assaulted the victim with "grease of such a temperature, an object which when used offensively against a person is likely to result in serious bodily injury by burning the skin of [the victim] in several places." As noted above, the evidence showed the appellant was hiding in the bathroom of room nine when the victim entered the room. Without warning, appellant came out of the bathroom with a pot of hot grease in his hands and threw the grease onto the victim, causing burns to the victim's body. Appellant argues that grease is not an "object" as contemplated by OCGA § 16-5-21 (a) (2), and, therefore, "there was insufficient evidence to establish the essential elements of aggravated assault." We disagree.

Under OCGA § 16-5-21 (a) (2), "whether the instrument used constitutes 'a deadly weapon' or an 'object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury' is properly for the jury's determination." *Hillsman v. State*, 341 Ga. App. 543, 547 (2) (802 SE2d

7) (2017) (citation omitted). For objects not considered deadly weapons per se, the State has the burden of showing that the circumstances under which the object was used which made the object a deadly weapon. *Talley v. State*, 137 Ga. App. 548, 550 (1) (b) (224 SE2d 455) (1976). In making that determination, "[j]urors are entitled to use their own common sense as intelligent human beings on many questions." *Johnson v. State*, 246 Ga. App. 109, 111 (2) (539 SE2d 605) (2000) (citation omitted).

Appellant urges us to find that grease is a "substance" and not an "object." In the abstract, a knife can be classified as being many different things; a solid piece of matter, an eating utensil, a tool, or even an offensive weapon. *Hillsman*, 341 Ga. App. at 543. A human fist can be classified as a body part, but it can also be determined to be an offensive weapon "'depending upon the manner and means of the object's use, the wounds inflicted' and other evidence of the capabilities of the instrument." *Ellison v. State*, 288 Ga. App. 404, 405 (654 SE2d 223) (2007) (citation and punctuation omitted). The same logic is true for an automobile,[4] a wooden plank,[5] a dog,[6] the

---

[4]*Taul v. State*, 290 Ga. App. 288, 289 (2) (659 SE2d 646) (2008).

[5]*Reynolds v. State*, 294 Ga. App. 213, 217 (1) (c) (668 SE2d 846) (2008).

[6]*Braziel v. State*, 320 Ga. App. 6, 7 (1) (739 SE2d 13) (2013).

branch of a tree,[7] pepper spray,[8] a telephone receiver,[9] a lit cigarette,[10] and any number of other objects. We do not find persuasive appellant's argument that the relative viscosity of the substance that was used as a weapon has any bearing on whether the instrumentality used to assault another person qualifies as an "object" under OCGA § 16-5-21 (a) (2). Similarly, whether the object used to assault another person was a solid, liquid or gas is also immaterial in this analysis. Instead, the manner in which the object is used under the circumstances of the case authorizes the jury to determine whether it qualifies as an object under the statute. *Weaver*, 325 Ga. App. at 52. "These circumstances include 'the manner and means of the object's use, as well as any wounds inflicted and other evidence of the capabilities of the instrument.'" Id. (citations omitted).

In *Fordham v. State*, 352 Ga. App. 520, 520 (835 SE2d 360) (2019), the defendant was found guilty of both aggravated battery and aggravated assault for throwing liquid sulfuric acid drain cleaner onto the victim. On appeal, we held that

[7]*Hernandez v. State*, 274 Ga. App. 390, 391 (617 SE2d 630) (2005).

[8]*Weaver v. State*, 325 Ga. App. 51, 52-53 (752 SE2d 128) (2013).

[9]*Wheeler v. State*, 232 Ga. App. 749, 749-750 (503 SE2d 628) (1998).

[10]*Johnson v. State*, 246 Ga. App. 109, 111 (2) (539 SE2d 605) (2000).

there was sufficient evidence to prove aggravated assault stemming from the defendant's offensively dousing the victim with liquid drain cleaner from a bowl, but concluded that the offense of aggravated assault merged with the aggravated battery count. *Fordham*, 352 Ga. App. at 526-527. In that case, the substance that qualified as an object under OCGA § 16-5-21 (a) (2) was in a liquid form, just as the grease was in this case.

In this case, appellant engaged in a surprise assault of the victim, he threw hot grease onto the victim in an offensive manner – as part of a larger attack – and he used the grease to inflict injury to the victim by causing second degree burns over his body. We conclude that there was sufficient evidence from which the jury could find appellant guilty under count five of the indictment. See *Wells v. State*, 125 Ga. App. 579, 580 (188 SE2d 407) (1972) (the lethal character of a weapon used in making an assault may be inferred from the effect and nature of the wound inflicted); *Knox v. State*, 254 Ga. App. 870, 871 (564 SE2d 225) (2002) ("The question of whether an object or instrument that was used against someone constitutes a deadly or offensive weapon is properly for a jury to decide.")(citation omitted).

b. *Count Eight - Theft by Taking*

Appellant also argues that there was insufficient evidence from which the jury could have found him guilty under count eight of the indictment for theft by taking. Under OCGA § 16-8-2, "[a] person commits the offense of theft by taking when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken . . . ." The indictment charged appellant with theft by taking, alleging he "unlawfully [took] property, including a DVR box, from the rental office of The Stallion Motel...said property belonging to The Stallion Motel, with a value of one thousand five hundred dollars ($1,500.00) or less with the intent to deprive said owner of said property . . . ."

Here, appellant argues that no one associated with the Stallion testified that any property was missing and that a DVR was admitted into evidence. In other words, appellant argues that the evidence did not establish that appellant actually took the DVR. However, in this case, the surveillance video played for the jury clearly shows appellant taking a black rectangular box that was located in the office of the motel after unplugging it from what appear to be electrical cords. The video then shows appellant leaving the motel office with the item that he had just taken from the office concealed

11

in a bag. Additionally, Brown testified that appellant initially sent her to look for the video surveillance recorder after he killed the victim, and after she could not locate it, the appellant went to the office to retrieve the recorder himself. Appellant then got into Brown's vehicle and told her that "I got it, I got the tape." Appellant put the recorder into a plastic bag to make it look like laundry to avoid drawing suspicion from other motel guests and threw the bag over a bridge as they were fleeing the scene.

Whether that black rectangular box was a "DVR box" as alleged in the indictment, was a computer that was used to operate the DVR recorder, or was some other device, was a matter left for the jury to decide. The jury had the opportunity to observe the evidence and decide for themselves the nature and character of the black rectangular box. A rational jury could find that appellant unlawfully took a "DVR box" belonging to the Stallion based upon the evidence presented. "On appeal, '[w]e neither weigh the evidence nor determine witness credibility, which are tasks that fall within the exclusive province of the jury[.]'" *Johnson v. State*, 367 Ga. App. 108, 109 (1) (367 SE2d 77) (2023). "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). "Value

is not an element of the crime of theft by taking as proscribed by [OCGA § 16-8-2] . . . Thus, the value of stolen items is relevant only for purposes of distinguishing between a misdemeanor and a felony . . . The evidence authorized a finding that the stolen property '. . . was of some value which will authorize a conviction of theft by taking and sentencing as for a misdemeanor . . . .'" *Stancell v. State*, 146 Ga. App. 773, 773 (2) (247 SE2d 587) (1978).

While the State clearly could have produced more concrete evidence of exactly what the black rectangular box was designed to do and who was the lawful owner of the box that was stolen, the video surveillance recording, when combined with the other testimony in the case, provided sufficient evidence that would authorize a conviction for theft by taking.[11] See *Ferguson v. State*, 307 Ga. App. 232, 233-234 (1) (704 SE2d 470) (2010) (holding that evidence in video surveillance footage showing

_____

[11] "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." *McJunkin v. State*, 160 Ga. App. 30, 31 (1) (285 SE2d 756) (1981) (citation omitted). It is clear that the black rectangular box that appellant took was either not a surveillance recorder or not the only surveillance recorder. However, appellant does not argue fatal variance in this case. Instead, appellant argues that the evidence presented at trial was insufficient to sustain a conviction for theft by taking.

person taking victim's car was sufficient to support identification of defendant as thief and, thus, his conviction for theft by taking motor vehicle).

c. *Count Nine - Tampering with Evidence*

In count nine of the indictment, appellant was charged with tampering with evidence by "knowingly conceal[ing] physical evidence, to wit: a DVR box, . . . with intent to prevent the apprehension of Alexis Bianca Brown, another person. . . . " OCGA § 16-10-94 (a) provides that "[a] person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence."

OCGA § 16-10-94(c) addresses *punishment* for the offense of tampering with evidence. That subsection provides:

> [A]ny person who [commits the offense of tampering with evidence] involving the prosecution or defense of a felony *and involving another person* shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than three years; provided, however, that any person who violates subsection (a) of this Code section involving the prosecution or defense of a serious

14

> violent felony as defined in subsection (a) of Code Section 17–10–6.1 *and involving another person* shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than ten years. Except as otherwise provided in this subsection, any person who violates subsection (a) of this Code section involving the prosecution or defense of a misdemeanor shall be guilty of a misdemeanor.

(emphasis added). Appellant argues that there was insufficient evidence to support a conviction on count nine. We disagree.

There was evidence presented from which the jury could conclude that appellant's purpose in taking the black rectangular box was to avoid Brown's apprehension. The surveillance footage showed Brown's distinctive purple Jeep, Brown entering the office, and the victim later entering Brown's room. Brown testified that after appellant killed the victim, he instructed Brown to take the victim's keys, enter the rental office, and "go find a tape." The surveillance footage then shows Brown searching the office. Appellant is then seen on video surveillance searching the office and ultimately taking the black rectangular box from the office of the Stallion. Appellant also discarded the box over a bridge to eliminate whatever was contained within the box as potential evidence. There was sufficient evidence

presented from which a jury could conclude that appellant was guilty of the offense of tampering with evidence because Brown and her car had been recorded at the hotel prior to appellant's killing of the victim.

2. Appellant next argues that the trial court committed plain error when it failed to charge the jury sua sponte that the jury needed to make a factual finding as to appellant's motivations in tampering with the evidence. Appellant acknowledges that no objection was made to the trial court's instructions to the jury. However, OCGA § 17-8-58 (b) affords appellant the ability to argue plain error on appeal, even in the absence of a timely objection to the charge of the court. "An appellant seeking to establish plain error must make four showings:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."

*Clark v. State*, 370 Ga. App. 430, 436-437 (2) (897 SE2d 645) (2024) (citation and punctuation omitted).

As noted above, OCGA § 16-10-94 (a) sets forth the elements of the crime while subsection (c) addresses punishment for the crime. If appellant tampered with evidence in an attempt to avoid Brown's apprehension, the punishment would be for a felony. Because the indictment alleged that the underlying crime was a serious felony as defined under OCGA § 17-10-6.1, the potential punishment was between one and ten years. However, if appellant tampered with evidence to avoid his own apprehension, the crime would be deemed a misdemeanor.

The indictment charged that appellant tampered with evidence "with intent to prevent the apprehension of Alexis Bianca Brown, another person . . . ." Nowhere within the indictment did the State allege that appellant's motivation in removing the DVR box was to prevent his own apprehension. In *Hampton v. State*, 289 Ga. 621, 623 (3) (713 SE2d 851) (2011), overruled on other grounds by *Nalls v. State*, 304 Ga. 168 (815 SE2d 38) (2018), the indictment charged the defendant with tampering with evidence "to prevent the apprehension of [co-defendant 1], [the defendant], and [co-defendant 2]." *Hampton*, 289 Ga. at 623. In that case, the verdict form did not allow

for the jury to make findings as to whether the defendant's actions were motivated by a desire to prevent apprehension of the defendant or either of the co-defendants. Id. Because it was not clear whether the jury found that the defendant's actions would constitute a misdemeanor or felony, the defendant could only be sentenced for the misdemeanor grade of the offense. Id. In contrast, here the State did not charge appellant with tampering with evidence to prevent his own apprehension. So, *Hampton* is not controlling.

We find that appellant failed to establish that the alleged legal error was "clear or obvious, rather than subject to reasonable dispute" under the second prong of the four part test for plain error. Therefore, we find that there was no plain error in the instructions given to the jury.

3.Finally, appellant argues that the trial court erred in allowing recordings from a telephone call made by appellant to a juror into evidence during the sentencing hearing. During the sentencing hearing, evidence was admitted over the objection of appellant which showed that on the day after the jury returned its verdict in this case, appellant placed a recorded telephone call from the jail to a juror who participated in the trial of the case. The evidence showed that appellant used his assigned PIN

number to call a telephone number that belonged to the residence where the juror resided. Appellant identified himself by name on the recording and when the juror got on the telephone, appellant thanked the juror for the juror's verdict. The juror immediately asked appellant how he got the juror's number and appellant responded that "God works in mysterious ways." Appellant then told the juror that he was indebted to the juror for the verdict and the juror responded that they were not going to have that conversation. The juror then ended the call.

Pretermitting whether admission of the call was relevant to sentencing or constituted error, it is clear from the record that while the trial judge found the evidence interesting and indicated that the sheriff's office may also find the evidence interesting as to their ongoing operation of the jail, that the trial court did not place any undue weight on the evidence. Instead, the court emphasized what the court described as "horrific acts" that appellant committed during the actual crime as proven by the evidence. The trial court went on to recount evidence of the theft and tampering with evidence charges, noting that appellant's actions in taking the device from the office showed a guilty conscience when he took what he thought was evidence of the crimes that had been committed. Finally, the trial court noted that

appellant had been served with a recidivist notice under OCGA § 17-10-7 (a) and that the court felt that the maximum sentence for the offenses of which appellant was convicted was an appropriate sentence under all of the facts and circumstances of the case.

The sentence was within the statutory limits allowed by law. The court was required to sentence appellant to the maximum amount of time for each offense due to the recidivism notice and exercised its discretion in having those sentences run consecutive with one another. *Miller v. State*, 351 Ga. App. 757, 769 (2) (b) (833 SE2d 142) (2019) ("'trial courts have great discretion in determining whether to run sentences concurrently or consecutively' so long as they are within the statutory allowances"). The trial court concluded by noting that the appellant would be eligible for parole because he was not sentenced under subsection (c) of § 17-10-7. There is no evidence in the record that the trial court placed any undue weight or even considered the calls made by the appellant to the juror when imposing sentence. Therefore, this enumeration of error is also meritless.

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*